ABRAHAM GUDWIN v. ALEXANDER GUDWIN

SUPERIOR COURT    HARTFORD COUNTY    FILE No. 75093

Memorandum filed June 20, 1946.

*Abraham A. M. Schweitzer,* of Hartford, for the Plaintiff.

*Warren Maxwell,* of Hartford, for the Defendant.

COMLEY, J.   The parties of this case are brothers and both are dentists.   The defendant resides in the town of Wethersfield at the corner of Wolcott Hill Road and Wells Road.   His house faces Wolcott Hill Road and in it he maintains an office for the practice of his profession.   There is a garage, separated from the house and in back of it, which faces Wells Road and is reached by a gravel driveway.   Immediately in front of the garage doors is a concrete apron.

The plaintiff had been an officer in the dental corps of the United States Army. He had been discharged and was on terminal leave at the time in question. For a short time after his discharge he was employed by another dentist in Pough-keepsie, New York. On Saturday, February 17, 1945, he had resigned from this position and had gone to the defendant's home in Wethersfield for a rest and social visit preparatory to opening an office of his own in New York City.

On the afternoon of Monday, February 19, 1945, the plain-tiff and the defendant and the latter's wife went out in the defendant's automobile. They returned shortly before 7 p. m. The defendant, who had office hours for receiving patients from 7 to 9 p. m., requested the plaintiff to take his wife shopping and then put the car away for the night. The plaintiff drove the defendant's wife to some neighborhood stores where they purchased groceries. They returned to the defendant's house about 7:30 and the plaintiff drove the car into the garage. He removed the groceries from the car and carried them into the house. He then walked from the house across the backyard to the garage for the purpose of closing the doors. While exerting pressure against the doors, his feet slipped upon a thick coating of ice which had accumulated upon the concrete apron in front of the garage doors and in the ensuing fall he fractured the humerus in his right arm. The driveway, the concrete apron and the yard in the rear of the defendant's house were covered with snow and ice and had been so covered for several days prior to the accident.

To determine whether the defendant is liable to the plaintiff, it is necessary first to define the legal relationship existing be-tween the parties.

The plaintiff's visit at the defendant's house was social in its nature. Our Surpeme Court seems never to have had occasion to pass upon the relationship between a host and a guest paying a social visit. In *Deacy v McDonnell,* 131 Conn. 101, the plaintiff was a social guest of the defendant's servant. The trial court held that the plaintiff was an invitee and not a licensee. Upon appeal it was held unnecessary to decide this issue because the defendant's conduct was such as to make him liable to the plaintiff in either capacity. Furthermore, when one hires a servant, it is an implied term in the contract of em-ployment that the servant shall have the privilege of receiving social visitors. Thus there is an element of business involved

which might well give rise to a distinction between the status of the servant's guest and the status of the employer's guest.

It is, of course, the rule in this jurisdiction that a social guest of a tenant is an invitee of the landlord when using common hallways or stairs. *Reardon* v. *Shimelman,* 102 Conn. 385, 386. That rule rests upon the business relationship between the landlord and tenant. The landlord rents his premises for profit and thereby invites upon premises all those who have occasion to visit the tenant whether for business or for pleasure. It is a privilege extended to the tenant as part of the rental contract.

There is no such business relationship underlying the ordinary visit of a social guest upon the premises of his host. It is generally held in jurisdictions where the question has been directly decided that such a guest is not an invitee but a mere licensee. See 12 A. L. R. 987, 92 A. L. R. 1005. In *Comeau* v. *Comeau* 285 Mass. 578, 580, Chief Justice Rugg said: ". . . where a guest is invited to come upon the premises of his host for social or benevolent purposes, the relation created is not that of invitee and invitor in a business sense but that of licensee or licensor. . . . So far as we are aware there are no decisions to the contrary."

In the Restatement, 2 Torts, § 331, comment a, gratutitous licensees are said to include "social guests who, in a sense, are persons temporarily adopted into the possessor's family."

The plaintiff was, therefore, a licensee upon the defendant's premises. "An owner of land ordinarily owes no duty to a licensee, any more than he does to a trespasser, to keep his premises in a safe condition because the licensee or trespasser must take the premises as he finds them and assumes the risk of any danger arising out of their condition." *Hayes* v. *New Britain Gas Light Co.,* 121 Conn. 356, 357. However, if a landowner knows that a licensee is on his premises and "he there creates a condition which he might reasonably anticipate would cause danger to the licensee and creates it under such circumstances that the latter would not, by reasonable use of his own senses, discover it, the landowner owes the licensee the duty to take reasonable means to safeguard him against the extra hazard by removing the cause of danger or giving reasonable warning of its presence." *Olderman* v. *Bridgeport-City Trust Co.,* 125 Conn. 177, 182.

And even where the dangerous condition is not the result of some activity on the part of the landowner and, in that sense, is not created by him, he "may also be under a duty to warn a licensee of whose presence he becomes aware of dangerous conditions which the owner knows but which he cannot reasonably assume that the licensee knows or by a reasonable use of his faculties would observe." *Deacy* v. *McDonnell,* supra, 104.

The defendant in the present case knew, of course, of his brother's presence, for the latter had been his house guest for two or three days. The defendant also knew, or was chargeable with knowledge of, the slippery condition of the concrete apron in front of the garage doors. It was, therefore, his duty either to remove the dangerous condition or to warn his brother of its presence unless, under all the circumstances, he could reasonably assume that his brother was already aware of it. Under the circumstances, it seems to me that he was entitled to make that assumption. The plaintiff had been his guest since the preceding Sautrday. Although it does not appear that the plaintiff had driven the defendant's car in or out of the garage prior to the evening of February 19, it does appear that he had been to the garage with the defendant on other occasions in the course of his visit. Just before the fall which caused his injuries he had walked from the garage to the house with an armful of groceries. He testified directly that he knew that there was ice on the ground around the garage. The only reasonable inference from the evidence is that he was fully aware of the icy conditions which prevailed not only on the concrete apron but generally over the surrounding ground. I, therefore, conclude that the defendant violated no duty in failing to warn him of the danger.

The plaintiff makes the further claim that, even though he was only a licensee during most of the period of his visit, he became temporarily the servant or agent of the defendant when he was acting upon the defendant's request that he take his wife shopping, and that thereafter he put the car in the garage for the night.

It is difficult to see how this change in legal status, even if it existed, would help the plaintiff. While it is true that a master owes a duty to his servant to provide a reasonably safe place to work, "the servant assumes the ordinary hazards incident to his employment, and also those hazards of which he has knowledge, either actual or constructive, arising after his em-

ployment, if, with a comprehension of the risk and without any promise that the unsafe conditions shall be remedied, or other inducement from the master, he voluntarily continues his employment." *Rescigno* v. *Rosner,* 124 Conn. 253, 256.

When the plaintiff consented to take the defendant's wife shopping and put the car away for the night, he knew or should have known of the slippery conditions and if he can be said to have been acting as the defendant's servant he assumed that hazard.

In any event, it would not seem that the plaintiff became the defendant's servant merely because he consented to do a small favor for the defendant, at least as between the parties themselves. We are not here dealing with the situation which might have arisen if the plaintiff, while driving the car, had injured a third party. As between the defendant and the third party, the plaintiff might well be regarded as the defendant's agent. It would hardly seem, however, that when a guest, in the course of a social visit, consents to perform a small favor for his host out of the spirit of friendship or out of gratitude for the entertainment which he is receiving he thereby becomes his host's servant or agent, as between themselves, while he is performing the favor. The performance of such small services by a guest is such a common incident of the guest-host relation-ship that it can hardly be regarded as changing the character of that relationship. It is perhaps significant that counsel have been unable to find any case in which that claim has been made.

Judgment may be entered for the defendant.