SZAFRANSKI and another, Appellants, v. RADETZKY and others, Respondents.

*April 15—May 10, 1966.*

122

For the appellants there was a brief by *Roman H. Papka* and *Kersten & McKinnon*, attorneys, and *Kenan J. Kersten* of counsel, all of Milwaukee, and oral argument by *Kenan J. Kersten*.

For the respondents there was a brief by *Ebert, Kuswa & Ebert* and *M. Wesley Kuswa*, all of Milwaukee, and oral argument by *M. Wesley Kuswa*.

HEFFERNAN, J.

## 1. *Jurisdiction of appeal.*

On oral argument, counsel for defendants moved to dismiss the appeal for lack of jurisdiction. It appears from the record that the order sustaining the defendants' demurrer was entered on July 1, 1965, and the plaintiffs

were given twenty days in which to file an amended complaint. On August 9th, no amended complaint had been filed, and the defendants moved to dismiss. On September 30th, an order was entered dismissing the complaint. The defendants take the position that, since this order was not appealed, the present appeal is without jurisdiction and must be dismissed. However, a search of the record reveals additional facts that we deem controlling. The record indicates that on September 28, 1965, two days before the order of dismissal, the appellants perfected their appeal by serving a notice of appeal and a notice of undertaking upon the parties and filing those documents, together with the undertaking itself, with the clerk of circuit court as directed by sec. 274.11 (1), (2), and (3), Stats.[1]

Sec. 274.11 (4), Stats., provides that this court has jurisdiction of the subject matter from the time of the entry of the appealable order in the trial court, in this case the order of July 1, 1965, and jurisdiction of the persons of the litigants from the time of the proper service and filing of the notice of appeal and undertaking. This latter step was completed two days before the order of dismissal, and it is therefore apparent that the circuit court was without jurisdiction to enter the order of dismissal.

Additionally, we have held that the submission of a brief in this court or otherwise participating in a review upon the merits constitutes a waiver of objection to jurisdiction over the person. *Baumgarten v. Jones* (1963), 21 Wis. (2d) 467, 470, 124 N. W. (2d) 609; *Town of Madison v. City of Madison* (1960), 12 Wis. (2d) 100, 104, 106 N. W. (2d) 264; *Asen v. Jos. Schlitz Brewing Co.* (1960), 11 Wis. (2d) 594, 599, 106 N. W. (2d) 269. We pointed out in *Rachlin v. Drath* (1965), 26 Wis. (2d) 321, 325, 132 N. W. (2d) 581, the ob-

[1] At the time of the dismissal the trial judge had not been advised of the appeal.

jection to the jurisdiction of this court may in the proper case be preserved by a motion to dismiss the appeal. The respondents did not make a timely motion to dismiss upon the grounds that are now alleged,[2] hence, though we were to find those grounds meritorious, the objection to the jurisdiction would thereby be waived. We conclude that this appeal is properly before the court.

> 2. *Where the parties occupy the relationship of host and invited social guest, did the hosts fail to exercise the standard of care required by negligently storing gunpowder on the premises in such quantities and under such circumstances as to make it likely that a fire and explosion would occur and did they fail to exercise ordinary care with respect to the method and manner of storing and handling of the gunpowder?*

The facts alleged make it clear that the Szafranskis were the guests of Mr. and Mrs. Radetzky in their home. Though they were the invited guests, they were, in the parlance of tort law, not invitees, but licensees.[3]

The duty of a possessor or owner of property with respect to those upon the property varies with the legal status of the person who suffers an injury on the premises. If the person is a trespasser, the owner of land has the duty to refrain from wilful and intentional injury. *Shea v. Chicago, M., St. P. & P. R. Co.* (1943), 243 Wis. 253, 257, 10 N. W. (2d) 135. He is not liable for injury to trespassers, as a general rule, caused by his failure to exercise reasonable care to put his land in

---

[2] Defendants' motion to dismiss the appeal on grounds that the notice of appeal had not been served personally upon each "party adverse" to them was denied with costs on January 10, 1966.

[3] ". . . a social guest, however cordially he may have been invited and urged to come, is not in law an invitee—a distinction which has puzzled generations of law students, and even some lawyers." Prosser, Law of Torts (hornbook series, 3d ed.), p. 387, sec. 60.

safe condition for them, nor is he obliged to refrain from operations or activities that might cause injury (Prosser, Law of Torts (hornbook series, 3d ed.), p. 365, sec. 58) at least until the trespasser is discovered. Restatement, 2 Torts, p. 917, sec. 337, takes the position that there is a duty to warn known trespassers of highly dangerous conditions.

In general, the duty owed an invitee is that of ordinary care. *Schroeder v. Great Atlantic & Pacific Tea Co.* (1936), 220 Wis. 642, 645, 265 N. W. 559.

In the instant case, the Szafranskis were the social guests of the Radetzkys, and between them the duty owed was that of licensor to licensee. *Cordula v. Dietrich* (1960), 9 Wis. (2d) 211, 212, 101 N. W. (2d) 126.

The decisions of this court hold that the possessor or occupier of premises may be liable for injuries to the licensee in two situations. The licensor may be liable because the injury was caused by a "trap" on the premises. *Greenfield v. Miller* (1921), 173 Wis. 184, 187, 180 N. W. 834, 12 A. L. R. 982; *Cordula v. Dietrich* (1960), 9 Wis. (2d) 211, 213, 101 N. W. (2d) 126; *Brinilson v. Chicago & N. W. R. Co.* (1911), 144 Wis. 614, 618, 129 N. W. 664. He has, however, no obligation to the licensee in regard to dangers that are unknown to him.

The licensor may, also, be liable for injury to the licensee when the injury is caused by the active negligence of the licensor. *Cermak v. Milwaukee Air Power Pump Co.* (1927), 192 Wis. 44, 50, 211 N. W. 354; *Taylor v. Northern Coal & Dock Co.* (1915), 161 Wis. 223, 229, 152 N. W. 465; *Muench v. Heinemann* (1903), 119 Wis. 441, 447, 96 N. W. 800; *Brinilson v. Chicago & N. W. R. Co.* (1911), 144 Wis. 614, 618, 129 N. W. 664.

The question of "trap" does not arise in this case. A "trap" arises when the owner fails to disclose to the licensee a known but concealed danger. There is no allegation that there was any danger known to the defendants that was unknown to the plaintiffs. The complaint does allege that Richard was "engaged in loading shells

with said gunpowder to the knowledge and with the consent of the defendants . . . ." There was no "trap."

The question remains: Was the conduct alleged "active" negligence? In *Cermak, supra,* the licensee was negligently hit on the head by a pipe wielded by the licensor's employee. In *Taylor, supra,* the licensee was struck by a coal hoist operated by defendant's agents. In *Brinilson, supra,* the licensee fell through a grating over a pit used for the discharge of steam in the conduct of the licensor's business.

The central thread of these cases carries the connotation expressed in Prosser, *supra,* p. 388, sec. 60, of "operations" carried on by the owner or occupier of the land:

"It is now generally held that as to any active operations which the occupier carries on, there is an obligation to exercise reasonable care for the protection of a licensee. He must run his train, operate his machinery, or back his truck with due regard . . . that . . . the licensee may be present."

2 Harper and James, Law of Torts, p. 1476, sec. 27.11, expresses the rule:

" '. . . in cases involving . . . active *conduct,* as distinguished from conditions of the premises, the landowner or possessor may be liable for failure to exercise ordinary care towards a licensee whose presence on the land is known or should reasonably be known to the owner or possessor.' "

Applying the tests of the cases and text referred to above, it appears that the negligence complained of was of an active or operational type. The defendants are charged with negligence in the storing of gunpowder and in handling it without exercising ordinary care. This is active negligence. It should also be emphasized that while nonactive or nonoperational types of conduct do not give rise to liability, that once the conduct is determined to be of the active or operational kind, the standard of care is "ordinary care." Harper and James, *supra,* p. 1476; Prosser, *supra,* p. 388.

We therefore conclude that the complaint in respect to paragraphs (c) and (d) was sufficient to state a cause of action. The demurrer in that respect should have been overruled.

*3. Do the allegations that defendants violated village of Shorewood explosives licensing ordinance and industrial commission order setting conditions for storage of explosives state cause of action for negligence?*

The village of Shorewood ordinance prohibits under penalty the keeping of gunpowder without first obtaining a license from the chief of police.[4] The plaintiffs contend that the failure to obtain the required permit (a fact admitted by the demurrer) in itself constitutes a cause of action. Plaintiffs state that, "where the law requires some particular thing to be done . . . to secure the personal safety of others, a failure to perform such duty constitutes actionable negligence . . . ." We agree with this well-accepted rule of law, but we cannot conclude that the ordinance on its face was designed to

---

[4] "General Ordinances of the Village of Shorewood.

"**Section 13–703 Keeping Dynamite and Gunpowder. Permit Required.**

"Any person or persons who shall keep or have or suffer to be kept or had in any building or part of any building owned or occupied by him, her, them or it in this Village, any gunpowder, dynamite or any other explosive material, without first having obtained a permit from the Chief of Police, shall be punished as indicated hereafter.

"**Section 13–704 Penalties ($10 to $100 or 30 days)**

"Any person, society, club, firm, partnership, or corporation violating any sections of this article, unless otherwise herein prescribed, shall be punished by a fine of not less than ten ($10.00) dollars nor more than one hundred ($100.00) dollars and the costs of prosecution, and in default of the payment of such fine and costs of prosecution, shall be imprisoned in the County Jail or the House of Correction for Milwaukee County, Wisconsin for a term not exceeding thirty (30) days."

secure the personal safety of others from injuries caused by the negligent explosion of gunpowder. It may well have been intended as a method of controlling or of being informed of the possession of explosives by persons of unlawful or criminal character. The statute did not prohibit the possession of gunpowder; rather, it allowed the possession and storage of gunpowder upon the obtaining of a permit. We do not perceive that under this ordinance, which sets no standards for storage or handling, and which prescribes no safety measures, the gunpowder would be less likely to explode had the possessor been issued a permit.

In *Derr v. Chicago, M. & St. P. R. Co.* (1916), 163 Wis. 234, 239, 157 N. W. 753, we held that the fact that the plaintiff was driving an automobile that had not been registered, as required by the statutory regulation that no automobile shall be operated on any public highway unless it shall have been registered, did not preclude him from recovery since that fact had no causal relation to the injury.

Recently, in *Meihost v. Meihost* (1966), 29 Wis. (2d) 537, 139 N. W. (2d) 116, we reiterated the proposition that the violation of a statute or ordinance designed to protect a class of persons from a particular harm constitutes negligence *per se,* but in that case we concluded that the ordinance that provided penalties for leaving a key in an unattended car was merely an anti-theft ordinance, and that, therefore, the culpable party in respect to the ordinance was not to be held negligent by one who was subsequently injured when struck by a stolen automobile.

It was apparent from the legislation there considered, and it is apparent here, that the ordinance was not designed to protect third persons and, hence, its breach is not negligence. Its violation is irrelevant to the issues of this lawsuit. The trial judge properly sustained the demurrer to the cause of action based upon the violation of the ordinance.

We also conclude that the allegation that defendants violated the regulations of the industrial commission in regard to the storage of explosives fails to state a cause of action.[5]

As a matter of law, the defendants have not and could not have violated the section of the Administrative Code referred to. The complaint makes it clear that the explosion that injured the plaintiffs took place in the home of the Radetzkys. The authority of the industrial commission in respect to this provision is limited by sec. 101.09, Stats., which confers jurisdiction over employments and places of employment. Sec. 101.10 (5b) specifically prohibits the entry of the commission or its agents into a private dwelling. The regulation does not apply to a private residence, and, hence, the storage of gunpowder on the Radetzkys' premises is not violative of this provision of the Administrative Code.

The appellants contend that, though the code is not concerned with private dwellings, it nevertheless sets a

---

[5] Wis. Adm. Code, sec. Ind 5.04, as it was released in January, 1956, Register No. 110.

"(2) Not more than a total quantity of 50 pounds of dynamite for sale or use shall be kept or stored in or on any premises within the corporate limits of any city or village. Such 50 pounds or less of such dynamite shall be kept and stored in a magazine made of fire-resistive materials or of wood covered with sheet iron and mounted on wheels or skids, and kept locked except when opened necessarily for use by authorized persons. Such magazine shall be plainly marked EXPLOSIVES, and located within a building, on the floor nearest the ground level, and within 10 feet from an outside entrance.

"(3) Not more than a total quantity of 50 pounds of gunpowder and black powder may be kept or stored in any building or on any premises within the corporate limits of any city or village. Such powder shall be kept in closed metal canisters placed in a separate magazine constructed and located as described in section Ind 5.04 (2).

". . .

"(6) Anyone storing explosives or detonators within the corporate limits of any city or village shall notify the chief of the fire department of the place, extent and manner of such storage."

standard of care the breach of which is negligence. To agree with the appellants we must conclude that it was the legislative intent, as expressed by the delegated rule-making power of the industrial commission, that the standards set for places of employment, and determined usually only after an extensive fact-finding procedure involving the presentation of facts at a hearing, should be equally applicable to a private residence. We cannot agree that the legislature reasonably intended that these standards should be used to determine the negligence of a householder. In holding that it would violate the legislative intent to construe the safe-place statute to impose a duty in regard to a passerby upon the street, this court said that the "statutes are not to be extended so as to impose any duty beyond that imposed by the common law unless such statute clearly and beyond any reasonable doubt expresses such purpose by language that is clear, unambiguous, and peremptory." *Delaney v. Supreme Investment Co.* (1947), 251 Wis. 374, 380, 29 N. W. (2d) 754.

We agree with the trial judge that the Administrative Code sets no standard of care that is applicable to these defendants, and agree that the demurrer was properly sustained in this respect.

### 4. *Did the complaint state a cause of action under the doctrine of res ipsa loquitur?*

In addition to alleging elements of negligence discussed above, the plaintiffs alleged as an alternative cause of action the doctrine of *res ipsa loquitur*. In that allegation they incorporated by reference the factual background of the complaint. As a part of the *res ipsa loquitur* allegation, the plaintiffs stated that "by reason of some negligence on the part of the defendants . . . a fire and explosion were caused to occur." The learned trial judge held that in a licensor-licensee situation, *res ipsa loquitur* is not a sufficient allegation inasmuch as

the application of the doctrine leads only to the conclusion that ordinary care was not exercised. It does not go to the question of operational or active negligence, which must be alleged to impose liability upon a licensor. The same rationale is expressed in Prosser, *supra:*

"Res ipsa loquitur leads only to the conclusion that the defendant has not exercised reasonable care, and is not in itself any proof that he was under a duty to do so. Thus a trespasser or a licensee injured by the condition of premises may still have no right to recover even though the facts speak for themselves." Prosser, Law of Torts (hornbook series, 3d ed.), p. 230, sec. 39. See also 65 C. J. S., Negligence, p. 1005, sec. 220 (7) (a).

Since the doctrine of *res ipsa* is available only under those circumstances when the conduct is peculiarly within the knowledge of the defendant, there is no basis for the inference to be derived from the plaintiffs' allegations that the conduct was active or operational negligence giving rise to liability rather than merely negligence of a nonactive kind. The doctrine of *res ipsa loquitur* is, of course, not a rule of pleading but a doctrine from the law of evidence that permits an inference of the defendant's negligence without any direct testimony as to his conduct at the very time such negligence occurred.

It is settled in this state that *res ipsa loquitur* may properly be alleged in a complaint and may be alleged, in addition or alternatively, although all the allegations of specific negligence are made. See Ghiardi, Res Ipsa Loquitur in Wisconsin, 39 Marquette Law Review (1956), 361, 379. However, to use the doctrine of *res ipsa* in pleading, sufficient facts must be alleged to show that its use is appropriate. Our court has held that the following elements are required for the application of *res ipsa. Turk v. H. C. Prange Co.* (1963), 18 Wis. (2d) 547, 119 N. W. (2d) 365:

1. The accident does not occur in the absence of negligence.

2. The defendant must have exclusive control of instrumentality.

These elements have not been alleged in this complaint.

When the facts developed in the course of trial are sufficient to raise a *res ipsa* inference, a plaintiff may rely on that doctrine although he did not plead it. However, if a complaint based upon *res ipsa* is attacked by demurrer, it will be sustained only if the essential elements of *res ipsa* are alleged. (See 3 Am. Jur., Pleading and Practice Forms, Anno., p. 80, sec. 3:42, for a sample allegation of *res ipsa loquitur*.)

We therefore conclude that the trial judge properly held that the demurrer to the second cause of action should be sustained.

*By the Court.*—That portion of the order sustaining the demurrer of Arthur and Ernestine Radetzky to the first cause of action is reversed. That portion of the order sustaining the demurrer of Richard Radetzky to the first cause of action is affirmed. That portion of the order sustaining the demurrers to plaintiffs' second cause of action is affirmed. The order of September 30, 1965, dismissing the complaint is reversed, and the cause is remanded for further proceedings consistent with this **opinion.**