KASLO, Appellant, v. HAHN, Respondent.

*September 6—October 3, 1967.*

For the appellant there was a brief by *Kersten & McKinnon,* attorneys, and *George P. Kersten* of counsel, all of Milwaukee, and oral argument by *George P. Kersten.*

For the respondent there was a brief by *Hoffman, Cannon, McLaughlin & Herbon,* attorneys, and *David M. Quale* of counsel, all of Milwaukee, and oral argument by *Mr. Quale.*

BEILFUSS, J.  The parties agree that at the time of the accident the plaintiff was a social guest of the defendant and as such that the legal status between the parties was that of licensee-licensor.

In *Szafranski v. Radetzky* (1966), 31 Wis. 2d 119, 126, 141 N. W. 2d 902, this court said:

"The decisions of this court hold that the possessor or occupier of premises may be liable for injuries to the licensee in two situations.  The licensor may be liable because the injury was caused by a *'trap' on the premises. Greenfield v. Miller* (1921), 173 Wis. 184, 187, 180 N. W. 834, 12 A. L. R. 982; *Cordula v. Dietrich* (1960), 9 Wis. (2d) 211, 213, 101 N. W. (2d) 126; *Brinilson v. Chicago & N. W. R. Co.* (1911), 144 Wis. 614, 618, 129 N. W. 664.  He has, however, no obligation to the licensee in regard to dangers that are unknown to him.  (Emphasis supplied.)

"The licensor may, also, be liable for injury to the licensee when the injury is caused by the *active negligence of the licensor.  Cermak v. Milwaukee Air Power Pump Co.* (1927), 192 Wis. 44, 50, 211 N. W. 354; *Taylor v. Northern Coal & Dock Co.* (1915), 161 Wis. 223, 229, 152 N. W. 465; *Muench v. Heinemann* (1903), 119 Wis. 441, 447, 96 N. W. 800; *Brinilson v. Chicago & N. W. R. Co.* (1911), 144 Wis. 614, 618, 129 N. W. 664." (Emphasis supplied.)

The trial court at the conclusion of the testimony determined as a matter of law that the shoescraper was not

a trap and that the defendant was not guilty of active negligence in placing the scraper on the patio.[1]

The issues then are: Is there any credible evidence which would sustain a verdict to the effect (1) that the shoescraper was a trap, or (2) that the placing of the shoescraper on the patio was active negligence.

The shoescraper consisted of a strip of metal about 10 inches long supported at each end by metal standards or brackets five inches high. The top of the metal strip or blade was approximately three and one-half inches from the patio floor, with a narrow space between the bottom of the blade and the floor. This device was affixed to the concrete patio floor parallel to, and about two or three inches in from the patio's edge. It was about two inches from one of the wooden posts supporting the patio roof. The scraper had been in this position since the defendant himself had installed it in 1952 or 1953.

It appears that at the time of the accident the sun was shining but the patio was somewhat shaded.

A conflict appears in the testimony as to whether there was untrimmed grass along the patio's southern edge immediately behind the scraper. Plaintiff's witnesses, her daughter and her son-in-law, testified that the grass behind the scraper was untrimmed and coming to the top of the scraper effecting a camouflaged appearance. The defendant testified that the edge of the patio was trimmed. In any event, it is clear that the grass did not cover the scraper but at most was only growing behind it and at most was only even in height to the top of the scraper. The trial court pointed out: "That condition didn't exist from the way she [plaintiff] went." She approached the scraper from the patio. From that side it

---

[1] The trial court also found as a matter of law that plaintiff was 50 percent or more causally negligent but a discussion of this issue is not necessary in this opinion.

was open and observable, with no grass to obscure its presence. Plaintiff's own testimony indicates she was looking at the defendant at the time she fell, not at her feet or the ground. Had she looked she would have seen the scraper.

"A 'trap' arises when the owner fails to disclose to the licensee a known but concealed danger." *Szafranski, supra,* page 126.[2]

The trial court stated:

"There was nothing concealed, in the court's opinion, about this foot scraper, it was perfectly obvious and open and unconcealed, and anyone using, making reasonable use of his faculties would have observed it, and it was, in the court's opinion, perfectly obvious and perceptive to anyone using one's senses."

The facts presented here bring this case within the court's holding in *Cordula v. Dietrich* (1960), 9 Wis. 2d 211, 101 N. W. 2d 126, where the court held that a garden hose left by the defendant across the sidewalk leading to his house should have been obvious to the plaintiff and, therefore, did not constitute a "trap."

Since a trap exists only if there is a "concealed" danger, and since the shoescraper here was not "concealed" from the view of the plaintiff, we agree with the trial court that the scraper was not a trap as a matter of law.

Plaintiff contends that the defendant's act of placing and affixing the scraper to the patio some eleven or twelve years prior to the accident constitutes "active negligence." This court recently considered the term "active negligence" in *Szafranski v. Radetzky, supra,* page 127:

[2] *See also* 2 Harper and James, Law of Torts, pp. 1471–1475, secs. 27.9, 27.10.

"The question remains: Was the conduct alleged 'active' negligence? In *Cermak, supra,* the licensee was negligently hit on the head by a pipe wielded by the licensor's employee. In *Taylor, supra,* the licensee was struck by a coal hoist operated by defendant's agents. In *Brinilson, supra,* the licensee fell through a grating over a pit used for the discharge of steam in the conduct of the licensor's business.

"The central thread of these cases carries the connotation expressed in Prosser, *supra,* p. 388, sec. 60, of 'operations' carried on by the owner or occupier of the land:

" 'It is now generally held that as to any active operations which the occupier carries on, there is an obligation to exercise reasonable care for the protection of a licensee. He must run his train, operate his machinery, or back his truck with due regard . . . that . . . the licensee may be present.'

"2 Harper and James, Law of Torts, p. 1476, sec. 27.11, expresses the rule:

" ' ". . . in cases involving . . . active *conduct,* as distinguished from conditions of the premises, the landowner or possessor may be liable for failure to exercise ordinary care towards a licensee whose presence on the land is known or should reasonably be known to the owner or possessor." '

"Applying the tests of the cases and text referred to above, it appears that the negligence complained of was of an active or operational type. The defendants are charged with negligence in the storing of gunpowder and in handling it without exercising ordinary care. This is active negligence. It should also be emphasized that while nonactive or nonoperational types of conduct do not give rise to liability, that once the conduct is determined to be of the active or operational kind, the standard of care is 'ordinary care.' Harper and James, *supra,* p. 1476; Prosser, *supra,* p. 388."

The term "active negligence," then, as used in licensor-licensee cases, connotes the carrying on of some operation or activity in a negligent manner. Harper and James use the term "active intervention" to distinguish between the carrying on of a hazardous activity and a condition

of the premises whether created by natural causes or by an affirmative act of a defendant.[3]

A condition of the premises whether created through an affirmative act of a defendant or through natural causes is not an activity. An act, then, which creates a dangerous "condition of the premises" is not an "activity," nor is it "active conduct," "operational conduct" or "active intervention." Consequently, a licensor cannot be held liable for an act which creates a dangerous "condition of the premises." In such a case liability can be established if the condition is a trap and the defendant fails to warn, but the liability then is based on the defendant's failure to warn rather than his act in creating a dangerous condition.

Most of the Wisconsin cases in this area support this conclusion. Some of the cases involving active negligence are summarized in *Szafranski, supra*. As the opinion indicates, these all involved activities carried on on the premises as distinguished from a single act creating a condition of the premises. In line with these cases is *Szafranski* itself. There the activity was the negligent storing and handling [4] of gunpowder. This was an activity, not a single act creating a dangerous condition of the premises.

Conversely, in most Wisconsin cases where a condition of the premises results from an act of the owner or occupier, no activity is found and consequently no active negligence.

---

[3] The term "active negligence" as used in describing the duties of the owner or occupier of real estate premises is not to be confused with the use of terms "active" and "passive negligence" in automobile guest cases. See *Theisen v. Milwaukee Automobile Mut. Ins. Co.* (1962), 18 Wis. 2d 91, 105, 118 N. W. 2d 140, 119 N. W. 2d 393.

[4] In *Szafranski, supra*, the "handling" or activity was the defendant's loading shells with gunpowder.

In *Brady v. Chicago & N. W. Ry.* (1954), 265 Wis. 618, 625, 62 N. W. 2d 415, where a boy fell from a catwalk across the defendant's bridge, this court said:

"The danger arose solely from the manner in which defendant constructed and maintained its premises and it was open and apparent. This passive negligence, such as it was, would not sustain a cause of action in favor of an adult licensee . . . ."

Further examples are *Greenfield v. Miller* (1921), 173 Wis. 184, 180 N. W. 834, and *Cordula v. Dietrich, supra.* In *Greenfield* the court held that the placing of a small rug on a slippery floor did not constitute active negligence. In *Cordula,* the court referring to *Greenfield* said, at page 213:

"We see no more active negligence on the part of the respondent in placing the garden hose across his sidewalk than there was in the placing of a small rug on a slippery floor."

The only Wisconsin case in this area cited by counsel which does not square with the decisions referred to above is *Masek v. Bubenheimer* (1938), 229 Wis. 194, 281 N. W. 924. In this case the defendant was incensed because people, in backing their automobiles out of a garage, occasionally ran off the driveway onto his newly seeded lawn. After several futile attempts to prevent this, defendant drove a pipe into the ground next to his driveway. The pipe extended about eight inches above the ground and had a sharp, rough edge on top. The defendant avowed his purpose thusly, page 197:

" 'I put the pipe there so you wouldn't go on my grass, and if you went on the grass it would cut your tire.' "

The plaintiff, a licensee, was injured one evening when she fell over the pipe when attempting to get out of her car. The court considered the defendant's conduct "active" negligence.

The trial court in the instant case distinguished *Masek* in its oral decision, stating:

"Of course, that carries the element of malice, and that is not evident in this case . . . ."

However, the element of "malice" was not essential to the decision in *Masek*. Rather, the court in *Masek, supra,* page 199, applied the following rule from *E. L. Chester Co. v. Wisconsin Power & Light Co.* (1933), 211 Wis. 158, 173, 247 N. W. 861:

"Under ordinary circumstances the defendant is liable if it should have anticipated injury to others as a result of its lack of ordinary care, . . ."

It is our present opinion that the near "wantonness" of defendant's conduct in *Masek* led the court into erroneously labeling the conduct "active negligence." That conduct was in no sense an "activity" or an "operation." Rather, the court should have based liability on the "trap" theory. That all the elements of recovery on the "trap" theory were present in *Masek, supra,* is clear from a statement of the court on page 199:

"The fact that the defendant drove the pipe with *sharp rough edges* into the ground so that its top was only eight inches above the ground and *quite incapable of being seen* in the nighttime, *without notifying or warning* the plaintiff or her husband as to its presence, supports the conclusion that the defendant ought reasonably to have foreseen that by so doing he would thereby expose the interests of another to an unreasonable risk of harm." (Emphasis supplied.)

Clearly the pipe constituted a "trap" and the court should have so held rather than mislabeling the defendant's conduct "active negligence." Conceivably, recovery could have also been sought for intentional tort.

In this case defendant's conduct in placing the shoe-scraper on the patio was in no way an "activity" or an "operation." It was an *act* creating a condition of the

premises. As in *Cordula, supra,* we can see no more active negligence on the part of the respondent in placing the shoescraper on his patio than there was in the placing of a small rug on a slippery floor, or a garden hose on the sidewalk. The defendant's act was not "active negligence" as a matter of law.

*By the Court.*—Judgment affirmed.

HALLOWS, J., took no part.