FLINTROP and wife, Appellants, v. LEFCO and wife, Respondents.

*No. 146.  Argued September 7, 1971.—Decided October 5, 1971.*
(Also reported in 190 N. W. 2d 140.)

For the appellants there was a brief by *Samson & Nash* and *Robert E. Sutton,* all of Milwaukee, and oral argument by *Mr. Sutton.*

For the respondents there was a brief by *Prosser, Wiedabach, Koppa, Lane & Quale,* attorneys, and *David M. Quale* of counsel, all of Milwaukee, and oral argument by *David M. Quale.*

CONNOR T. HANSEN, J. On March 5, 1968, plaintiff-appellant, Ronald Flintrop, and his wife, Beverly (hereinafter plaintiffs) attended a social gathering at the home of the defendants-respondents, Seymour Lefco, and his wife, Rachael (hereinafter defendants). He arrived at approximately 9 p. m., at which time he observed that the weather was clear. He also noticed that the front steps were clear and not slippery. During the next two hours a natural accumulation of ice formed on the front steps and sidewalk. Defendant testified that he was aware of this condition because (1) it was apparent from looking outside, (2) guests who had arrived after the plaintiff had informed the defendant of the weather condition, (3) it was one of the topics of conversation during the course of the evening, and (4) defendant's wife was aware of the condition and tried to find an abrasive to cover the steps. Defendant also testified that, as the guests were leaving, he said, "Be careful, the steps are slippery." Plaintiff denied that any warning was given, or that he overheard any con-

versation relating to the weather. He testified that he did not go outside, nor look out, nor become aware that it was raining out.

At approximately 11 p. m. plaintiff left the home of the defendants and in the process of descending the front steps slipped and fell, sustaining a fractured arm. There was no testimony as to whether or not it was raining or snowing at that time. Plaintiff testified that he was not certain whether any of the outside lights were on, but observed only that it was dark. He also testified that he was looking directly ahead and there was enough light to see the porch, the steps and the front sidewalk. However, he was able to see the ice on the steps and sidewalk after he fell. Plaintiff's wife, who had preceded the plaintiff down the steps, testified that, although there was some light, it was dark and she had to feel her way out.

Testimony revealed that at the time of the accident the defendant was standing in the doorway with the front door open. Light was available from the inside hall light, a porch light six or seven feet to the side of the front porch, and a street light approximately 50 feet from the front porch. The light directly over the front steps and porch, however, had been burned out for some time, and the defendant had knowledge of this fact.

## Issue.

The issue in this case is whether the trial judge erred in directing the verdict against the plaintiffs.

At the time of the accident, the plaintiff was a social guest of the defendant and between them the duty owed was that of licensor to licensee. *Kaslo v. Hahn* (1967), 36 Wis. 2d 87, 153 N. W. 2d 33. A licensor may be liable to the licensee for injuries caused by the active negligence of the licensor, or by a trap on the premises.

*Kaslo v. Hahn, supra; Scheeler v. Bahr* (1969), 41 Wis. 2d 473, 164 N. W. 2d 310; *Szafranski v. Radetzky* (1966), 31 Wis. 2d 119, 141 N. W. 2d 902; *Kretchman v. Reid* (1970), 46 Wis. 2d 677, 176 N. W. 2d 301. A condition of the premises is not active negligence. *Kaslo v. Hahn, supra.* To establish liability on the part of the defendants, therefore, it is necessary to decide that the icy condition of defendants' front steps constituted a trap. "A 'trap' arises when the owner fails to disclose to the licensee a known but concealed danger." *Szafranski v. Radetzky, supra,* 126.

In *Kaslo v. Hahn, supra,* 93, this court held that liability arising from injury caused by a trap is not predicated on any act of the landowner but rather on a failure to warn of the condition. Under *Kaslo,* a trap envisions known, concealed and dangerous conditions, whether they result from natural conditions or an affirmative act on the part of the landowner. Therefore, it cannot be held categorically that a natural accumulation of ice and snow is not a trap as a matter of law.

The defendant testified that he was aware of the slippery condition of his front steps; therefore, the only question to be decided on review is whether this condition was observable as a matter of law.

We are of the opinion that the trial court erred in ruling as a matter of law that this was not a concealed situation.

Questions to be resolved at trial were: (1) Whether, in fact, plaintiff was adequately warned; and (2) whether there was sufficient illumination, under the facts of this case, so that the condition was obvious to a reasonable man in the exercise of ordinary care. These are questions of fact, and under the evidence presented in this case should have been answered by the jury.

In *Phoenix Ins. Co. v. Wisconsin Southern Gas Co.* (1970), 45 Wis. 2d 471, 484, 485, 173 N. W. 2d 610, this

court quoted the standard by which decisions on motions for a directed verdict will be reviewed:

" 'In determining whether or not the trial court was in error in failing to direct the verdict, this court must take that view of the evidence which is most favorable to the party (the plaintiff in this case) against whom the verdict was sought to be directed. *Schumacher v. Klabunde* (1963), 19 Wis. (2d) 83, 87, 119 N. W. (2d) 457; *Mueller v. O'Leary* (1935), 216 Wis. 585, 587, 257 N. W. 161. If there is any evidence to sustain a defense or a cause of action, the case must be submitted to the jury. *Kielich v. Whittaker* (1924), 183 Wis. 470, 198 N. W. 270. The weight and sufficiency of the evidence is for the jury (*Jolitz v. Fintch* (1938), 229 Wis. 256, 261, 282 N. W. 87), as is the weight to be given to the witness' positive or negative testimony. *Conrardy v. Sheboygan County* (1956), 273 Wis. 78, 82, 76 N. W. (2d) 560. Furthermore, it is basic that the credibility of the evidence and the inferences to be drawn therefrom are matters for the jury. *Braatz v. Continental Casualty Co.* (1956), 272 Wis. 479, 487, 76 N. W. (2d) 303. If there is any evidence other than mere conjecture or incredible evidence to support a contrary verdict, the case must go to the jury. *Larson v. Splett* (1954), 267 Wis. 473, 66 N. W. (2d) 181. Incredible evidence is evidence in conflict with the uniform course of nature or with fully established or conceded facts. *Davis v. Skille* (1961), 12 Wis. (2d) 482, 107 N. W. (2d) 458; *Czerniakowski v. National Ice & Coal Co.* (1948), 252 Wis. 112, 31 N. W. (2d) 156.' "

Viewing the evidence in its most favorable light to the plaintiffs, we believe there was sufficient credible evidence presented by the plaintiffs to create issues of fact for jury determination.

Respondent argues that since plaintiff was able to see the ice after he fell, he was able, as a matter of law, to see the ice before he fell. Observability after the fact, while of probative value, is not necessarily determinative of the issue of observability before the fact, especially where the observations are made from two different

positions. In determining whether or not a trap exists, the question of observability must be decided with reference to the point of the alleged entrapment.

Respondent further argues that inadequate lighting should have warned plaintiff that a dangerous condition might exist and cites *Scheeler v. Bahr, supra*, in support of this proposition. In *Scheeler*, plaintiff dove into shallow, murky water and sustained severe injuries. Plaintiff argued the existence of a trap because a murky, roiled condition concealed the true depth of the water. This court held that a trap did not exist because the inability to gauge the depth of the water was an observable danger to a diver or swimmer. In the instant case, plaintiff saw the steps just as the plaintiff in *Scheeler* saw the water. However, that is where the analogy ends. In *Scheeler*, plaintiff observed a condition of the water, whereas here plaintiff did not observe a condition of the steps. Whether he should have observed the condition of the steps is a question of fact.

Respondent's final argument is that other jurisdictions have uniformly denied recovery to a licensee who slips and falls on a natural accumulation of ice and snow. Annot. *Injury to Social Guest,* 25 A. L. R. 2d 598, 608, and cases cited therein. A close examination of those cases, and supplemental cases, indicates that a natural accumulation of ice and snow may constitute a trap, given the necessary circumstances. *See, for example, Gudwin v. Gudwin* (1946), 14 Conn. Supp. 147, 150. However, in most of the cases cited, a necessary element to qualify the condition as a trap was missing. *Schmidt v. Langer* (1948), 336 Ill. App. 158, 83 N. E. 2d 34 (no evidence of responsibility for the premises) ; *Gudwin v. Gudwin, supra* (observable danger) ; *Quinlan v. Quinlan* (1962), 76 N. J. Super. 11, 183 Atl. 2d 712 (no knowledge on the part of the licensor) ; *Cesario v. Chiapparine* (1964), 21 App. Div. 2d 272, 250 N. Y. Supp. 2d 584

(actual knowledge of the condition by the licensee); *Roberts v. Bradley* (1966), 114 Ga. App. 262, 150 S. E. 2d 720 (constructive knowledge of the condition by the licensee).

At the conclusion of the trial, plaintiffs' counsel requested the trial court to take the defendants' motion for directed verdict under advisement and allow the jury to return a verdict.

The results of the instant case cause us to reiterate the statement contained in the opinion of this court in *Davis v. Skille* (1961), 12 Wis. 2d 482, 107 N. W. 2d 458, and reaffirmed in several cases since then.[1]

"It is to be regretted that the circuit court did not reserve its ruling on the motion for directed verdict until after the jury had returned its special verdict. By so doing, even though the court after the return of the verdict did see fit to have granted the motion, there would now be no necessity of granting a new trial. We do not advocate that such procedure invariably be followed, but in close cases we deem it to be preferable." *Davis v. Skille, supra,* 490.

*By the Court.*—Judgment reversed and cause remanded for new trial.

ROBERT W. HANSEN, J. (*dissenting*). Must an Eskimo warn a departing guest that he might slip on the ice on his way from the igloo to his dogsled? Must a Wisconsin homeowner warn a social guest that, because it has rained, the grass may be quite wet? Must a Milwaukee dentist warn a houseguest upon departure that, since it has snowed, the steps or walk will likely be slippery? The answer in all three situations, this writer would submit, is No, because the condition outside the house is not so hidden or concealed that the guest cannot reason-

[1] *See: Zillmer v. Miglautsch* (1967), 35 Wis. 2d 691, 699, 151 N. W. 2d 741.

ably be expected to learn of it for himself.[1] The majority opinion concedes that, to establish the homeowner's liability, ". . . it is necessary to decide that the icy condition of defendants' front steps constituted a trap." A "trap" arises, as the majority states, when a condition constitutes " '. . . a known but concealed danger.' " Is a natural accumulation of rain, ice or snow such hidden or "concealed" danger? This court has held that a garden hose left by a homeowner across a walk leading to the house was not concealed and not a trap, commenting that: ". . . One might very well expect to encounter a hose across a sidewalk under such circumstances. . . ."[2] This court has held that a metal shoescraper partly obscured by untrimmed grass, on a concrete patio floor, was not a trap, because "the shoescraper here was not 'concealed.' " ". . . [h]ad she looked she would have seen the scraper."[3] What makes a natural accumulation of snow or ice following a snowstorm any more

---

[1] "It has been generally recognized that, in so far as a duty to warn licensees of dangers on the premises is recognized at all, such a warning is required only where the condition causing injury, or the risk of danger therefrom, is so hidden that the licensee does not and cannot reasonably be expected to learn of it for himself." 55 A. L. R. 2d 525, 533, *Duty of a possessor of land to warn adult licensees of danger*, sec. 3. (Citing cases from Arizona, California, Connecticut, Delaware, District of Columbia, Florida, Kentucky, Minnesota, Mississippi, Nebraska, New Hampshire, New Jersey, New York, Ohio, Oregon, Pennsylvania, Washington and West Virginia.)

[2] *Cordula v. Dietrich* (1960), 9 Wis. 2d 211, 213, 101 N. W. 2d 126, holding: ". . . Nor can it be said that the hose constituted a trap. . . . In any event, even if it be considered a danger, respondent would have no duty to give warning of a condition which should be obvious to the licensee. . . ."

[3] *Kaslo v. Hahn* (1967), 36 Wis. 2d 87, 91, 153 N. W. 2d 33, holding: "Since a trap exists only if there is a 'concealed' danger, and since the shoescraper here was not 'concealed' from the view of the plaintiff, we agree with the trial court that the scraper was not a trap as a matter of law."

of a "concealed danger" than a garden hose across a walk or a metal scraper on a patio? Nor is the case of the plaintiff helped by the allegation of inadequate lighting of the premises. Where a plaintiff dove off the end of a pier into the shallow waters of a murky lake, this court held that: ". . . where the obvious, roiled, and muddy condition of the water made it impossible for a licensee to reasonably estimate the depth of the water, the observation of these conditions constituted notice that a potential hazard existed to one who wished to use the lake at that place for swimming or diving."[4] Even if the area in front of the doctor's home had been completely dark, that would be an added "clear warning" to exercise particular care—a "signal" to proceed with caution. We see no reason why the theory of law applicable to the case before us should differ from that applied to public sidewalks where ice and snow are considered ". . . merely a natural formation" and neither municipality nor adjoining property owner is held responsible for its presence.[5] The writer would apply the same reasoning to the walkway and steps leading from the public side-

[4] *Scheeler v. Bahr* (1969), 41 Wis. 2d 473, 477, 480, 164 N. W. 2d 310, holding: ". . . The plaintiff asserts that the danger was concealed because the murkiness of the water prevented a visual gauging of the depth. This assertion, we conclude, is pregnant with the conclusion that the opaqueness of the water was in itself a notice of danger. It appears to this court that the failure to see the bottom of a lake or other body of water constitutes an observable danger. For a nonswimmer, it should serve as a clear warning that he may be venturing into waters beyond his depth. For a diver, it is a signal that the water may be too shallow for safe diving."

[5] On nonliability of municipality to frequenters of sidewalks for injuries due to natural accumulation of snow or ice, *see: Griswold v. Camp* (1912), 149 Wis. 399, 135 N. W. 754. For nonliability of owner of adjoining property to users of sidewalk based on icy condition of the walk, *see: Johnson v. Prange-Geussenhainer Co.* (1942), 240 Wis. 363, 368, 2 N. W. 2d 723.

walk to the house, and would affirm. This, as the writer sees it, would follow the cases up to now in Wisconsin and the law as of now in other states.[6] To permit a guest to recover damages from his host caused by snow or ice on the premises of the host places a new and uncalled-for burden on homeowners. For now the Wisconsin homeowner will surely need insurance coverage to protect against his failing to warn a departing guest that, when it rains, it will be wet, and, if it snows, it may be slippery.

I am authorized to state that Mr. Justice BRUCE F. BEILFUSS and Mr. Justice LEO B. HANLEY join in this dissent.

---

[6] "Attempts by a social guest to recover against his host for injuries allegedly caused by slipping on ice or snow which had been allowed to accumulate upon the approaches to the host's premises have been uniformly unsuccessful." 25 A. L. R. 2d 598, 608, Liability for injury to guest in home or similar premises, sec. 5. (Citing cases from Connecticut, Georgia, Illinois, Minnesota, New York and New Jersey.)