TERPSTRA, Appellant, v. SOILTEST, INC., and another, Respondents.

*No. 291. Argued April 3, 1974.—Decided May 20, 1974.*
(Also reported in 218 N. W. 2d 129.)

For the appellant there was a brief by *Conway & Conway* of Baraboo, and oral argument by *Georgia A. Felger* of Milwaukee.

For respondent Brittingham & Hixon Lumber Company there was a brief by *Conrad H. Johnson* and *Schlotthauer, Johnson & Mohs,* all of Madison, and oral argument by *Conrad H. Johnson.*

For respondent Soiltest, Inc., there was a brief by *Cross, Karch, Langer & Wagner* of Baraboo, and oral argument by *John M. Langer.*

HEFFERNAN, J.   On this appeal, Terpstra argues that the jury erred in finding that he was a trespasser rather than a licensee.

Terpstra contends that, on the day of the accident, he heard the sounds of construction and walked the half mile from his home to where the building was going up. He said he saw a "no trespassing" sign on the property, but when he talked to Soiltest's general manager and asked if he could walk around, he was told, "Ya, help yourself. You can walk around all you want to." Terpstra stayed on the premises until noon, when he returned home for lunch. When he returned to the construction site, only the carpenter, Herr, was present. He claims that he helped Herr in steadying a ladder and handing him pieces of lumber.

Terpstra testified that during the afternoon, while sitting on a sawhorse within the frame of the building, he suddenly saw the frame start to "lean." He dropped to the floor and did not remember anything until he regained consciousness shortly thereafter. A portion of the building frame had collapsed upon him. At trial, he said that he recalled no wind or gusts prior to the collapse. The carpenter, on the other hand, testified that just

before the collapse of the building, there was a sudden "whirlwind" and he saw leaves and branches fall from the trees and, after the collapse of the building, he saw a four-inch diameter branch upon the ground.

A statement was given by Terpstra prior to trial in which he stated that his first warning of danger was when he saw Herr's cap blown off by a strong gust of wind. This statement was introduced into evidence.

Herr denied that he received any assistance from Terpstra. He also testified that the building was specially braced to protect against whirlwinds, which were apparently common in the immediate area. A structural engineer testified after seeing photographs and reviewing testimony in respect to the type of bracing that, "If all of it [the bracing] was there as described and it was properly secured, the building should not have fallen down."

This review of the evidence reveals that it is immaterial whether the jury found that Terpstra was a trespasser or found that he was a licensee. Our review of the evidence, however, indicates that the jury improperly found that Terpstra was a trespasser. The jury was properly instructed by the trial judge that to find Terpstra a licensee it had to:

"[F]ind that the Plaintiff was upon the premises of the Defendant with the latter's permission or consent, either express or implied. . . . An implied consent or implied permission is equivalent to an implied invitation and is one given by an owner or occupant when a custom acquiesced in by him is, or when his acts or conduct are, such as would warrant a reasonable man, having knowledge thereof, in believing that the owner had given his consent or permission to another to come upon the premises."

The undisputed testimony shows that there was at least an implied permission given. Under the facts, the

jury should have found that Terpstra was a licensee. The evidence was undisputed that Terpstra was allowed to roam around the property with the full knowledge of the occupiers of the premises. This court has said:

"Where a person is upon the property of another with the other's knowledge, that is sufficient to establish the relationship [of licensor-licensee]." *Hensel v. Hensel Yellow Cab Co.* (1932), 209 Wis. 489, 500, 245 N. W. 159.

Accordingly, there was no jury question in respect to Terpstra's status. The trial judge could have ruled as a matter of law that Terpstra was on the premises with the knowledge of the occupier—and in fact with at least implied consent—and hence was a licensee as a matter of law. However, plaintiff's attorney never asked for such finding, and instead accepted the instructions in respect thereto without objection.

While we consider the jury's finding that Terpstra was a trespasser to be contrary to the undisputed evidence, that error is immaterial. Even though we were to hold, as a matter of law, that Terpstra was a licensee, the facts, given the interpretation most favorable to the plaintiff, would not support his cause of action.

In *Szafranski v. Radetzky* (1966), 31 Wis. 2d 119, 126, 141 N. W. 2d 902, we said that a possessor or occupier of land may be liable to a licensee in but two situations—a trap on the premises or active negligence by the licensor. Here, there was no evidence of a trap. A trap exists only when the land occupier fails to disclose to the licensee a known but concealed danger. *Szafranski, supra,* page 126.

Nor was there the slightest evidence of "active negligence" that would expose the licensor to liability. The negligence of the defendants, if any, was the unsafe condition of the building's frame. We said in *Kaslo v. Hahn* (1967), 36 Wis. 2d 87, 153 N. W. 2d 33:

"The term 'active negligence,' then, as used in licensor-licensee cases, connotes the carrying on of some operation or activity in a negligent manner." (P. 92)

"A condition of the premises whether created through an affirmative act of a defendant or through natural causes is not an activity. An act, then, which creates a dangerous 'condition of the premises' is not an 'activity,' nor is it 'active conduct,' 'operational conduct' or 'active intervention.' Consequently, a licensor cannot be held liable for an act which creates a dangerous 'condition of the premises.'" (P. 93)

Examples of conduct the court has determined to be active negligence are found in *Szafranski, supra* (where the defendants stored and handled explosives in their house and an explosion injured the plaintiff guests); *Cermak v. Milwaukee Air Power Pump Co.* (1927), 192 Wis. 44, 211 N. W. 354 (where the licensee was negligently hit on the head by a pipe wielded by the licensor's employee); and *Taylor v. Northern Coal & Dock Co.* (1915), 161 Wis. 223, 152 N. W. 465 (where the licensee was struck by a coal hoist operated by defendant's agents). Examples of situations where the court determined the owner or occupier was not guilty of active negligence are *Kaslo, supra* (where the licensee tripped over a shoescraper installed ten years previously by the owner), and *Brady v. Chicago & N. W. R. Co.* (1954), 265 Wis. 618, 625, 62 N. W. 2d 415 (where the deceased child had fallen from a catwalk along the railroad's bridge and "[t]he danger arose solely from the manner in which defendant constructed and maintained its premises and it was open and apparent").

Prosser, *Law of Torts* (4th ed. 1971), p. 376, sec. 60, states that the licensee takes the premises the way he finds them and has no right to demand the licensor to change his conduct. Prosser, pages 378–380. However, in active operations the licensor must exercise reasonable care for the protection of the licensee. Prosser, page

379. As to passive conditions on the land, the licensor is under no obligation to the licensee for conditions of which he does not know. Prosser, page 380.

While there were allegations in the complaint that the defendants were negligent in their conduct while Terpstra was on the premises, there is no proof in the record of any negligent conduct. All that was arguably shown was a negligently constructed building. Even if such negligence were conceded, the building as constructed did not constitute a trap, for no danger was apprehended or known by the defendants. The negligence, if any, was pre-existing in time and did not constitute active negligence in current operations.

Accordingly, the requested *res ipsa* instruction is irrelevant to liability in this case. Under the instruction [1] requested by the plaintiff, only an inference of ordinary negligence would be permissible. Under the law of this state governing the obligation of owners and occupiers of land to those who come upon it, there is no liability imposed as the result of a land occupier's ordinary negligence that causes harm to either a trespasser or licensee.

Under the facts, the plaintiff is not entitled to a verdict on either the trespasser or licensee theory.

The plaintiff now recognizes that current law prevents his recovery, for on this appeal for the first time he urges that we abandon our present law and hold that the rule of ordinary negligence—the reasonable man rule—shall

[1] "If you find that the defendants, Soiltest, Inc. and Brittingham & Hixon Lumber Company, had a right of control of the premises and the building being erected thereon that was involved in the accident, and if you further find that the accident claimed is of a type or kind that ordinarily would not have occurred had the defendants exercised ordinary care, then you may infer from the accident itself and the surrounding circumstances that there was negligence on the part of the defendants, unless the defendants have offered an explanation of the accident which is satisfactory to you."

apply in all cases where the dispute is between the owner or occupier of land and one who comes upon the land.

We decline to do so. Terpstra never raised the question in the trial court, and all the requested instructions were directed toward securing a verdict under the accepted law. The practice of this court is not to consider an issue raised for the first time on appeal.

In *Cappon v. O'Day* (1917), 165 Wis. 486, 490, 162 N. W. 655, this court pointed out:

"The reason for the rule is plain. If the question had been raised below, the situation might have been met by the opposite party by way of amendment or of additional proof."

The adoption of a new rule of law on appeal when the question was not raised at trial might well work hardship on the adversary. It would also deprive this court of the informed thinking of the trial judge on the matter.

It is true that we may in a proper case consider new issues for the first time on appeal. The question is one of judicial administration and policy, and not one of power. *State ex rel. General Motors Corp. v. Oak Creek* (1971), 49 Wis. 2d 299, 319, 182 N. W. 2d 481; *Cappon, supra,* page 491.

We are aware of the recent trend in other states toward the abolition of the common law distinctions between trespasser, licensee, and invitee in terms of the land owner's obligations, *e.g., Smith v. Arbaugh's Restaurant, Inc.* (D. C. Cir. 1972), 469 Fed. 2d 97; *Mile High Fence v. Radovich* (1971), 175 Colo. 537, 489 Pac. 2d 308; and *Pickard v. City and County of Honolulu* (1969), 51 Hawaii 134, 452 Pac. 2d 445; *Mounsey v. Ellard* (Mass. 1973), 297 N. E. 2d 43, 51; *Peterson v. Balach* (1972), 294 Minn. 161, 164, 199 N. W. 2d 639.

We choose, however, not to consider the abandonment of the traditional rule in this case. If a change is to be considered, it should be on the basis of a record made at

trial, where appropriate motions are made and instructions requested that will trigger the exercise of the trial judge's decision on the question as it may apply to a particular case.

The judgment dismissing the complaint must be sustained because the evidence presented to the jury was insufficient to hold the landowner liable to Terpstra, whether he be considered a trespasser or a licensee.

There are, however, collateral practice issues raised which should be clarified.

Plaintiff objects to the form of the verdict submitted to the jury. Questions 1, 4, and 7, respectively, inquire of the jury whether Terpstra was an invitee, a licensee, or a trespasser "on the day in question" and at the time he came upon the premises. The appellant is correct in his objection. The questions should have inquired of Terpstra's status at the very time of the injury, not his status at the time he came upon the premises nor his status on the day of the injury. *McNally v. Goodenough* (1958), 5 Wis. 2d 293, 300, 92 N. W. 2d 890.

Again, however, the objection comes too late. While Terpstra requested the questions that he now insists are correct, he did not object to the form of the questions actually submitted, and no specific objections were voiced in motions after verdict or for a new trial. The general objection made by plaintiff on motions after verdict "because of error in instructing the jury" does not have sufficient particularity to preserve a specific objection. *Kobelinski v. Milwaukee & Suburban Transport Corp.* (1972), 56 Wis. 2d 504, 517, 202 N. W. 2d 415; *Wells v. Dairyland Mut. Ins. Co.* (1957), 274 Wis. 505, 515, 80 N. W. 2d 380.

The burden is upon the party alleging error to establish by reference to the record that an error was specifically called to the attention of the trial court.

We repeat that, under the facts, this error could not have been prejudicial, for the evidence clearly showed that at the time of the injury, Terpstra, if either a trespasser or licensee, could not recover. There is no contention or evidence that he was an invitee.

We also believe that the court erred in failing to give the authorization to inspect medical records the same effect that would have been given were the inspection ordered under sec. 269.57, Stats.[2]

The authorization given by Terpstra provided:

"My attorneys, Conway & Conway, Conway Building, Ash at Tenth, Baraboo, Wisconsin, 53913, are to receive a copy of any and all records inspected or copied without expense to them."

Although the defendants secured the medical records, they refused to furnish Terpstra's attorney with copies. It was apparent during trial that some medical testimony had its genesis in the authorization given by plaintiff. Relying on the provisions of sec. 269.57, Stats., plaintiff's attorney moved to strike the testimony because he was not given copies as provided in the authorization. We believe that the principle espoused by plaintiff's attorney

---

[2] Sec. 269.57, Stats. 1971, provides in part:

"(3) No evidence obtained by an adverse party by a court-ordered physical examination or inspection under sub. (2) shall be admitted upon the trial or by reference or otherwise unless true copies of all reports, photographs, records, papers and writings made as a result of such examination or inspection and received by such adverse party have been delivered to the party claiming damages or his attorney not later than 15 days after the said reports, photographs, records, papers or writings from any such court-ordered physical examination are received by the said adverse party, provided that in an action for recovery of personal injuries, the party claiming damages shall in return deliver to the adverse party against whom the action is brought a true and correct copy of all reports of each physician who has examined or treated such person with respect to the injuries for which damages are claimed."

is an appropriate one, and, in the face of a timely exercise, a motion to strike should have been granted.

The medical authorization provided the same remedy to the defendants as they would be afforded under sec. 269.57, Stats. The authorization, however, obviated the necessity of securing a court order. In order to encourage the use of such authorizations and to avoid the consumption of unnecessary trial court time, the sanctions afforded by sec. 269.57 may be invoked when there is a failure to comply with conditions of the authorization that are consistent with the statutory remedies.

In the instant case, the plaintiff is not entitled to relief. He permitted the defendants' medical witness, Dr. James Huffer, to complete his testimony before moving to strike. The failure to make a timely objection constitutes a waiver of the objection. The objection must be made as soon as the objectionable nature of the testimony is reasonably apparent. McCormick, *Law of Evidence* (2d ed. hornbook series, 1972), p. 113, sec. 52. The motion here comes too late. Again, the testimony was not prejudicial. The evidence was in regard to physical injuries, but damages are not disputed on this appeal. The appeal is directed to the question of liability, and on that question the defendants must prevail.

*By the Court.*—Judgment affirmed.