# RURAL MUTUAL INSURANCE COMPANY,
## Plaintiff-Respondent,
### v.

# LeRoy O. PETERSON, Defendant-Appellant.

Supreme Court

*No. 85–0272. Argued September 30, 1986.—Decided November 18, 1986.*

(Also reported in 395 N.W.2d 776.)

165

For the defendant-appellant there was a brief by *Steven B. Goff* and *Bye, Krueger & Goff, S.C.*, River Falls, and oral argument by *Steven B. Goff.*

For the plaintiff-respondent there was a brief by *Gregory J. Egan* and *Moen, Sheehan, Meyer & Henke, Ltd.*, La Crosse, and oral argument by *Mr. Egan.*

BABLITCH, J.  LeRoy O. Peterson (Peterson) is the insured of Rural Mutual Insurance Company

(Rural). He appeals a summary judgment granting Rural's claim for reimbursement from him for $111,718.52 which was paid by Rural to an injured third party pursuant to Wisconsin's common carrier financial responsibility law. This court accepted certification from the court of appeals to decide 1) whether Rural is entitled to reimbursement from Peterson under the terms of its policy, and if so, 2) whether Peterson is entitled to a trial to determine his percentage of negligence and the amount of damages so that he may seek contribution from other joint tortfeasors.

Because neither state law nor public policy considerations prohibit the reimbursement provision of the policy, we hold that Rural is entitled to reimbursement from Peterson under the terms of the policy. We further hold that even if Peterson had a right to a trial on damages he has waived it.

The facts in this case are undisputed. Peterson operates a small trucking business. On or about December 18, 1979, Peterson purchased a motor vehicle insurance policy from Rural listing a 1972 Peterbilt truck and a 1974 Conr truck as insured vehicles. On January 17, 1980, a Form E blanket liability certificate was filed by Rural on Peterson's behalf with the Wisconsin Department of Transportation (DOT) pursuant to sec. 194.41(1), Stats., and Wis. Adm. Code Sec. Trans. 176.02(1)(a). The Form E certificate must be filed as proof that the common carrier has procured insurance as required by statute to cover fleet vehicles.

On February 25, 1980, Peterson purchased a 1978 Peterbilt tractor which was subsequently leased by Peterson to Myron H. Beguelin (Beguelin). Peterson did not list the 1978 Peterbilt as an insured vehicle with Rural. Under the terms of the lease agreement Beguelin

was to purchase enough primary public liability and property damage insurance for the 1978 Peterbilt to meet the prescribed minimums imposed by the various states. Beguelin purchased a policy covering the 1978 Peterbilt from Canal Insurance Company with limits of $100,000.

On April 23, 1980, during the lease term to Beguelin, the 1978 Peterbilt was involved in an accident causing injuries to Stephen G. Brohmer (Brohmer) in Monroe county, Wisconsin. A lawsuit was then filed in Monroe county by Brohmer. His claim against Peterson was for an amount in excess of the insurance coverage provided by all of the insurers that were involved in the lawsuit, and specifically in excess of the primary $100,000 policy of Canal Insurance Company.

Rural filed a motion for summary judgment in the Brohmer suit asserting that because the 1978 Peterbilt was not a listed vehicle in the policy, the policy did not provide coverage for the damage sustained by Brohmer. Rural further argued that sec. 194.41, Stats., and the blanket Form E filing did not, by operation of law, provide such coverage to Brohmer. This motion was denied and the Honorable James W. Rice, in a memorandum decision, found blanket coverage by operation of sec. 194.41(1) under Rural's policy for the unlisted vehicle involved in the Brohmer accident. This issue was not appealed and is therefore not before us.

On January 6, 1983, Peterson's attorney sent a certified letter to Rural's attorney demanding that Rural settle the case to avoid any exposure to Peterson. The Brohmer suit was subsequently settled with Rural contributing approximately $104,700 toward that settlement. However, Peterson refused to sign the settlement agreement because it did not release any claims Rural

may have had for reimbursement against him. Rural then filed suit against Peterson seeking reimbursement of the settlement contribution. Peterson answered and counterclaimed for harassment and bad faith by Rural.

Rural's demand for reimbursement is based upon paragraph 6, page 8 of Peterson's policy with Rural, which reads as follows:

> "When this policy is certified as proof of financial responsibility for the future under the provisions of the motor vehicle financial responsibility law of any state or province, such insurance as is afforded by this policy for bodily injury liability or for property damage liability shall comply with the provisions of such law which shall be applicable with respect to any such liability arising out of the ownership, maintenance or use of the automobile during the policy period, to the extent of the coverage and limits of liability required by such law, but in no event in excess of the limits of liability stated in this policy. *The insured agrees to reimburse the company for any payment made by the company which it would not have been obligated to make under the terms of this policy except for the agreement contained in this paragraph.*" Standard Automobile Policy, issued by Rural to Peterson, p. 8, paragraph 6. (Emphasis added.)

Each side moved for summary judgment and a stipulated set of facts was submitted by the parties to the Honorable Robert N. Ledin.

In his memorandum decision dated December 20, 1984, Judge Ledin granted Rural's motion for summary judgment, dismissed Peterson's counterclaim, and granted judgment for Rural in the amount of $111,718.52. The judgment included the payment made by Rural to settle the Brohmer case plus attorney's fees.

The first issue in this case, the enforceability of the contract reimbursement clause, involves the construction of state statutes, administrative codes, and insurance contract provisions, which are questions of law. Therefore the issue will be reviewed *ab initio*. *Cunningham v. Metropolitan Life Ins. Co.*, 121 Wis. 2d 437, 450, 360 N.W. 2d 33 (1985); *First Nat. Leasing Corp. v. Madison*, 81 Wis. 2d 205, 208, 260 N.W. 2d 251 (1977). The second issue, whether Peterson is entitled to a trial on damages or whether such a right has been waived, also involves a question of law which we will review *ab initio*. *See Employers Insurance of Wausau v. Sheedy*, 42 Wis. 2d 161, 166 N.W. 2d 220 (1969).

## I. ENFORCEABILITY OF THE REIMBURSEMENT PROVISION

Parties are at liberty to enter insurance contracts which specify the coverage afforded by the contract as long as the contract terms do not contravene state law or public policy. *McPhee v. American Motorists Ins. Co.*, 57 Wis. 2d 669, 673, 205 N.W. 2d 152 (1973); *see also Olander v. Klapprote*, 263 Wis. 463, 465, 57 N.W. 2d 734 (1953) (the right to limit an insurer's liability by terms of contract not questioned unless restriction is prohibited by statute or considerations of public policy). Peterson argues and we recognize that there is a general rule that an insurer has no right of subrogation or indemnification against its own insured, *Hallmark Ins. Co. v. Crary Enterprises, Inc.*, 72 Wis. 2d 472, 474, 241 N.W. 2d 171 (1976); 6A J.A. Appleman & J. Appleman, *Insurance Law & Practice*, sec. 4055 (1972). However exceptions have been recognized in instances where

state law and public policy are not undermined. *E.g.,* *Bennett v. The Preferred Acc. Ins. Co. of New York*, 192 F. 2d 748 (10th Cir. 1951) (applying Oklahoma law); *accord* 8B Appleman, *Insurance Law & Practice* sec. 4945. We conclude that the reimbursement provision at issue in this case is neither prohibited by statute nor public policy and is therefore enforceable.

We begin by noting that neither sec. 194.41, Stats., nor any other statute, prohibits the type of reimbursement clause found in Peterson's contract with Rural. Section 194.41 is the financial responsibility law for motor carriers. It provides that no permit may be issued to a common motor carrier to operate any of its vehicles unless an approved certificate for a policy of insurance is filed with the DOT and is in effect. This filing certifies that the insurer has provided liability coverage to the insured motor carrier for damages from injuries or death of persons arising from the negligent operation of the insured's vehicles. Section 194.41(1). The statute also directs the DOT to set the minimum amount of insurance required. In this case $100,000 coverage was required by law. Wisconsin Adm. Code sec. Trans. 176.06. The statute also permits the DOT to require blanket filings of insurance. This means that all the insured's vehicles are covered as required by sec. 194.41, regardless of whether the vehicle is specifically listed in the policy. Section 194.41(5).

The DOT, the agency charged with the "administration and enforcement" of the statute pursuant to sec. 194.41(4), Stats., has apparently determined that the statute permits reimbursement. Regulations issued by the DOT require a certificate of insurance to be filed with it on Form E, the Uniform Motor Carrier Bodily Injury and Property Damage Liability Certificate of

Insurance. Wisconsin Adm. Code Sec. Trans. 176.02(a). The regulations also require that whenever a Form E blanket filing is made, Form F, an endorsement which becomes part of the insurance policy be attached to it. Wisconsin Adm. Code Sec. Trans. 176.02(b). That endorsement provides that: "the insured agrees to reimburse the company for any payment made by the company which it would not have been obligated to make under the terms of this policy except by reason of the obligation assumed in making such certification." Wisconsin Adm. Code Sec. Trans. 176, Appendix II. Thus, Form F permits reimbursement of the insurer by the insured when liability results from the operation of the law, sec. 194.41, and not from the terms of the policy.

Notwithstanding the absence of a statutory prohibition against such clauses, Peterson, relying on *Miller v. Kujak*, 4 Wis. 2d 80, 90 N.W. 2d 137 (1958), insists that the general rule that an insurer has no right of subrogation or indemnification against its insured is dispositive of this case. We acknowledge the validity of this rule as a general statement of law. In *Hallmark* the court acknowledged "the general rule that an insurer cannot recover by right of subrogation from its own insured." *Id.* at 474. The court in *First Nat. Bank of Columbus v. Hansen*, 84 Wis. 2d 422, 267 N.W. 2d 367 (1978), explained:

> "[t]he rationale for this rule is that the insurer 'accepts not only the risk that some third party may cause the casualty but also ... that its own insured may negligently cause the loss. The insurer, however, has consented to this latter risk in exchange for the premiums received for his compensation obligation.'" *Id.* at 431-32, quoting *Hallmark*, 72 Wis. 2d at 476.

Although Peterson correctly states the general rule, we disagree that *Miller* stands for the proposition that an insurer and insured cannot allocate the ultimate responsibility for the loss sustained when an injured third party must be compensated pursuant to the state's financial responsibility law. In *Miller*, the insurance policy in question was issued to Moore Motor Freight Lines, the lessee of the truck involved in the accident. The driver of the truck, at the time of the accident, was hauling a load of steel for Moore. The policy contained a specific endorsement applying coverage to Moore " 'with respect to the operation of each of the vehicles . . . described.' " *Miller*, 4 Wis. 2d at 87. The policy listed the specific vehicle involved in the accident. This court held that because the policy covered the named vehicle, Moore as well as its driver were covered under the insurance policy. *Id.* at 86–87. Thus, coverage was mandated by the insurance policy.

Here, the only vehicles insured were the 1972 Peterbilt and the 1974 Conr. Unlike the vehicle in *Miller*, the vehicle involved in this accident, the 1978 Peterbilt, was not a named vehicle in the policy. Coverage was not mandated by the insurance policy.

The policy behind the general rule enunciated in *Miller* that an insurer cannot recover from its insured is not defeated in this case because here the insurer was required to cover the insured's loss by operation of the common carrier financial responsibility law. The risk of accident involving the unlisted 1978 Peterbilt was not specifically assumed by Rural. Premiums were not received from Peterson to cover such a risk.

Thus, *Miller* is not inconsistent with the enforcement of the reimbursement clause in this case. In *Miller* the insurer had specifically contracted with the insured

173

to cover accident risks arising from the listed truck's operation. In this case Peterson chose not to insure the 1978 Peterbilt. The 1978 Peterbilt became an insured vehicle only by operation of sec. 194.41, Stats., and the DOT regulations implementing the statute.

We find further support for the conclusion that reimbursement clauses are permitted in the financial responsibility context in sec. 344, Stats., a statute analogous to sec. 194.41. Section 344 sets forth the financial responsibility requirements for individual motorists. Specifically, sec. 344.33 (7) permits reimbursement from the insured to the insurer when the latter's obligation arises by operation of the financial responsibility laws and not by the terms of the policy. Section 344.33(7), illustrates that exceptions to the general rule that an insurer may not recover from an insured are made when coverage is afforded not by specific contract but by operation of law. Peterson has offered no reason why a different rule should apply when a common carrier instead of an individual motorist is involved and this court can find none.

We note that the *Olander* decision, which the court of appeals stated in its certification might support Peterson's position that the reimbursement provision is unenforceable, does not require such a conclusion. In *Olander*, the insurance contract included a clause excluding coverage for drivers under 25 years of age. The insurer attempted to seek reimbursement for coverage not required by operation of the financial responsibility laws but by a specific state statute which denied the insurer the right to exclude coverage of persons who were of legal driving age. Section 204.34(1), Stats.

1951.[1] The insurer argued that the provision in the applicable financial responsiblity law, sec. 85.09(21) (h) 1951[2] which allowed reimbursement in some circumstances applied. The court in *Olander* reasoned that when a statute other than the financial responsibility section required coverage the reimbursement clause was not operative. This holding in no way conflicts with enforcement of the clause in Peterson's contract. Here reimbursement is sought pursuant to the financial responsibility laws, sec. 194.41. Unlike the insurer in *Olander*, Rural does not attempt to enforce an exclusionary clause prohibited by statute. We reiterate that nothing in sec. 194.41 prohibits reimbursement in this case.

In addition, case law from other jurisdictions which have laws similar to sec. 194.41, Stats., clearly supports permitting reimbursement when payment by the insurer is required by operation of financial responsibility laws. *Bennett*, 192 F. 2d at 748; *Travelers Mut. Casualty Co. v. Herman*, 116 F. 2d 151 (8th Cir. 1940) (applying Kansas law), *cf. Tri-State Insurance Company v. Hobbs*, 347 P. 2d 226 (Okla. 1959) (reimbursement clause enforceable where insurer was required by operation of law to cover damages to goods being shipped).

In the *Herman* case the insured obtained insurance from Travelers Mutual to cover some of the vehicles used in her petroleum hauling business. A Kansas statute similar to sec. 194.41, Stats., required motor carriers to file proof of liability insurance with the State Corporation Commission. *Herman*, 116 F. 2d at 152. Commission regulations required a blanket filing so that all the carrier's vehicles were automatically covered. *Id.* at 153.

---

[1] Currently sec. 632.32(3) (b), Stats.

[2] Currently sec. 344.33(7), Stats.

175

The contract between the insured and Travelers contained a reimbursement provision similar to the one at issue in this case:

> "the Company shall be reimbursed by the Assured for any and all loss, costs, or expenses paid or incurred by the Company and which the Company would not be obliged to pay under the provisions of the policy independently of any statutory provision of this policy and/or any endorsement thereto." *Id.*

The court held the reimbursement clause was not a variance with the financial responsibility statute which was enacted "only to protect third persons from injuries to themselves and their property." *Id.*

Similarly in *Bennett*, a statute similar to sec. 194.41, Stats., required the insurer, Preferred Accident, to pay for injuries to the insured motor carrier's employees. The policy specifically excluded this coverage. *Bennett*, 192 F. 2d at 749. A reimbursement clause in the insurance policy nearly identical to the clause in the Peterson policy, required the insured, Bennett, to pay the insurer for payments which it would not have been required to make but for the state motor carrier financial responsibility laws. *Id.* The court held that the reimbursement provision was valid and concluded that "[t]here can be no doubt in this case as between Preferred and Bennett that the parties were at liberty to contract for insurance to cover such risks as they saw fit and be bound by the terms of the contract, and courts may not rewrite the contract." *Id.* at 751.

In these cases, the courts recognized that nothing in the state financial responsibility statute prevented the enforcement of the policy reimbursement provision where payment by the insurer was mandated by the law and not by the insurance contract. A leading commenta-

tor on insurance law supports this position. "Where the insurer is liable to third persons, but not to the insured, it may recover from the insured the amounts paid. *This result frequently follows under a form of statutory or required policy, where the insurer must answer to the one injured or damaged but may be entitled to reimbursement from its insured.*" Appleman, *Insurance Laws and Practice,* 8B sec. 4945 (1981) (Footnotes omitted.) (Emphasis added.)

Contrary to Peterson's assertion, public policy is not thwarted if reimbursement is permitted in this case. The policy of sec. 194.41, Stats., is to protect injured third parties. *Huset v. Milwaukee Dressed Beef Co.,* 46 Wis. 2d 317, 326, 174 N.W. 2d 740 (1970); *cf. Prickett v. Hawkeye-Security Insurance Company.,* 282 F. 2d 294, 298 (10th Cir. 1960) (statute concerning financial responsibility requirements for motor carriers "was to assure compensation to third persons ... "); *Bennett,* 192 F. 2d at 751 (the liability of the insurer "existed entirely by operation of a statute enacted for the protection of the public not the insured.") By mandating certain minimum coverage for motor carriers the legislature is assuring that injured third parties recover regardless of the financial condition of the insured.

Section 194.02, Stats. 1979–80, which sets forth the intent of ch. 194 also supports the interpretation that sec. 194.41 is intended to protect injured third persons. That section states in part that the policy and purpose of the chapter is to "protect the safety and welfare of the *traveling and shipping public* in their use of the highways." Section 194.02 1979–80.[3] (Emphasis added.) This court has previously concluded that sec. 194.02

---

[3] This intent section was substantially amended by ch. 347, laws of 1981. The intent section in effect in 1979 is applicable in this case.

"indicates that the legislature clearly intended to provide protection to innocent third persons." *Huset*, 46 Wis. 2d at 326. The policy of the statute is to assure recoverable compensation to members of the public injured by common carriers, not to allow an insured to reap the benefits of liability insurance coverage for which the insured has not paid. We agree with the statement made by the North Carolina Supreme Court when it faced a similar claim by an insurer for reimbursement where liability arose by operation of law:

> "We do not believe that the Legislature intended to enact a statutory scheme which would permit a wrongdoer to gratuitously reap the benefits of an insurance policy without being liable to indemnify the insurer who became liable solely by virtue of that statute. To so hold would be to reach a highly inequitable and foolish result." *Nationwide Mut. Ins. Co. v. Chantos*, 238 S.E. 2d 597, 605 (N.C. 1977).

The public policy embodied in sec. 194.41, Stats., has been satisfied. Brohmer, the innocent third party injured by the negligent operation of Peterson's 1978 Peterbilt, has recovered for his loss. Rural paid out approximately $104,700 to Brohmer on Peterson's behalf which, but for the blanket coverage mandated by operation of law, Peterson would have had to pay directly. To hold that an insurer cannot recover from its insured when it pays for damages caused by a fleet vehicle which was not listed on the policy and for which no premium was received would be grossly unfair. We refuse to permit the insured in these circumstances to be a free rider.

In addition to his reliance on the general policy against allowing an insurer to recover from its insured, Peterson argues that sec. 194.41, Stats., is concerned

with who is in the better position to handle the financial burdens imposed by the statute. He concludes that the insurance company is in a much better position to assume the burden. We reject this "deep pocket" approach. The message of state law and public policy to fleet owners, as we interpret it, is clear: list all the fleet vehicles and pay the premiums on all the vehicles.

For the reasons just delineated, we find that neither statute nor public policy is violated by the reimbursement clause contained in the insurance contract between Rural and Peterson. We therefore hold that it is enforceable and Rural is entitled to reimbursement from Peterson.

## II. RIGHT TO TRIAL ON DAMAGES

If the reimbursement provision is enforceable, Peterson argues that he is entitled to a trial on damages to determine his own percentage of negligence so he may seek contribution from joint tortfeasors. Peterson contends that Rural did not have express authority to settle the case by committing his funds and thus it would be unfair to require him to reimburse Rural for a settlement amount he did not approve. The trial court held that Peterson waived his right to a trial on damages when he continually demanded "that Rural settle the case for an amount far greater than the actual settlement provided."

Peterson has cited no authority for the proposition that he is entitled to a trial and our research has found none. Nevertheless, assuming there is a right to such a procedure, the issue of whether he is entitled to such a

trial or whether he waived the right is a question of law which we will review *ab initio*.

■

Prior decisions of this court establish that the intent to waive a right may be inferred as a matter of law from the conduct of the parties or may be determined as a question of fact where the inference does not arise as a matter of law. *Sheedy*, 42 Wis. 2d at 166, quoting *Nelson v. Caddo-Texas Oil Lands Co.*, 176 Wis. 327, 329 186 N.W. 155 (1922). Where the facts and circumstances relating to the conduct are admitted or clearly established, waiver becomes a question of law. *Swedish American Nat. Bank v. Koebernick*, 136 Wis. 473, 480, 117 N.W. 1020 (1908), *accord Zwietusch v. Luehring*, 156 Wis. 96, 114, 144 N.W. 257 (1914). The facts in this case are undisputed; thus, we consider the waiver issue as a matter of law.

Having reviewed the parties' stipulated facts and the trial court's findings of fact we conclude that Peterson waived his right to a trial on damages. *See General Acc. F. & L. Assur. Corp. v. Berquist*, 15 Wis. 2d 166, 174, 111 N.W. 2d 900 (1961). We base this conclusion on the following relevant facts. Peterson repeatedly demanded that Rural settle the Brohmer case. Peterson clearly appreciated his potential liability exposure as is evidenced by the following statement in a letter from Peterson's attorney to Rural:

> "Carmichael [Brohmer's attorney] has a clear case of liability and realistically damages could exceed one million dollars, now that we have no medical defense to their employment expert and economist. A substantial verdict in excess of the insurance coverage would cause my client, LeRoy Peterson, to lose his farm and all of his assets."

"Lisa Smith, on behalf of Canal Insurance, advised that she would recommend a substantial contribution on the part of Canal Insurance, and demand is hereby made that Canal and Rural *forthwith* settle this case to avoid any exposure to LeRoy Peterson."

The insurance contract between Peterson and Rural contained an unambiguous provision which required the insured "to reimburse the company for any payment made by the company which it would not have been obligated to make under the terms of the policy . . . " except for operation of the motor vehicle financial responsibility law. Based on these facts we conclude that Peterson demanded settlement with full knowledge that a claim for reimbursement could be made by Rural.

Despite his demand for settlement, his appreciation of his potential liability and his knowledge that Rural could demand reimbursement, Peterson now argues that Rural settled without his consent and that he thought up to the last minute that only Rural's funds were involved. Like the trial court we find this contention factually unsupported and unreasonable.

We also note that while Peterson refused to sign the settlement, he did not challenge the settlement on its merits by objecting to the dismissal of Brohmer's claims against him by the Monroe county circuit court. Peterson apparently hoped the court would rule on Rural's right to reimbursement in its stipulation and order approving the Brohmer settlement. The court concluded that Peterson refused to sign because he was not released from claims Rural may have against him for reimbursement. The court appropriately refused to dismiss Rural's potential claims against Peterson because Rural's claims for reimbursement were not before it.

Because Peterson, with knowledge of the reimbursement provision, demanded that Rural settle, and then failed to object to the dismissal of Brohmer's claims against him, we conclude that he waived his asserted right to a trial on damages. *See Berquist*, 15 Wis. 2d at 174.

*By the Court.*—The judgment of the circuit court is affirmed.