METRO TRANSPORTATION CO. t/a Yellow Cab Company, Official Creditors' Committee Pennsylvania Public Utility Commission

v.

BALBOA INSURANCE COMPANY.

Civ. A. No. 87–7050.

United States District Court,
E.D. Pennsylvania.

Jan. 6, 1988.

Kevin Walsh, Adelman, Lavine, Krasny, Gold & Levin, Philadelphia, Pa., for Metro Transp. Co.

Mary F. Walrath, William G. Downey, Clark, Ladner, Fortenbaugh & Young, Philadelphia, Pa., for Official Creditors' Committee.

William A. Alan Kohler, Daniel P. Delaney, Harrisburg, Pa., for Pennsylvania Public Utility Com'n.

J. Scott Victor, Lashner, Victor & Maschmeyer, Alan Wm. Margolis, Margolis, Edelstein, Scherlis, Sarowitz & Kraemer, Philadelphia, Pa., for defendant.

## MEMORANDUM

LUDWIG, District Judge.

Defendant Balboa Insurance Company moves to dismiss under Fed.R.Civ.P. 12(b)(1), 17 and 12(b)(6). For the following reasons the motion is denied.[1]

■ 1. Plaintiff Metro Transportation Company has standing to maintain this declaratory judgment action. The complaint alleges that Balboa wrongfully refused to "pay ... claims and judgments asserted and/or entered against Metro" falling within the scope of coverage of two automobile insurance policies issued to Metro for the policy period from October 1, 1984 to October 1, 1986. (Complaint ¶ 15). Metro's financial exposure and Balboa's denial of coverage create an "actual controversy". *Ideal Mut. Ins. Co. v. Limerick Aviation Co.*, 550 F.Supp. 437, 441 (E.D.Pa.1982) (construing Declaratory Judgment Act, 28 U.S.C.A. § 2201 (West Supp.1987)). *See also Riehl v. Travelers Ins. Co.*, 772 F.2d 19, 22–23 (3d Cir.1985) ("neither immediate liability for damages nor a liquidation to the extent of an insurer's indemnification obligation is necessary in this Circuit to establish a justiciable controversy").

Metro's uncertainty with respect to its rights under the policies is a cognizable interest. *See American Home Assurance Co. v. Liberty Mut. Ins. Co.*, 475 F.Supp. 1169, 1171 (E.D.Pa.1979); 20 Appleman, *Insurance Law & Practice* § 11354, at 332 (1980). Even if Metro is obligated to reimburse Balboa, a declaration that Balboa must initially pay these tort claims would substantially affect Metro's reorganization plan. Depending on Balboa's status as a creditor, Metro could obtain an ultimate benefit greater than it has vis-a-vis numerous tort claimants currently listed as creditors in the bankruptcy proceeding. *Cf. Kapp v. Naturelle, Inc.*, 611 F.2d 703, 707 (8th Cir.1979) (when it appears that there may be a surplus of assets to be returned to the bankrupt if claims in a bankruptcy proceeding are disallowed, the bankrupt has standing to contest the claims).

■ 2. The complaint does not fail to state a claim upon which relief can be granted. Metro's failure to plead its inability to pay the tort claims arising out of its operation of vehicles between October 1, 1984 and October 1, 1986 is not fatal. Metro may be able to show that Balboa insured it against such claims and did not merely guarantee payment upon Metro's default.[2]

---

1. The procedural history of this action and plaintiffs' contentions are set forth in detail in *Metro Transp. Co. v. Balboa Ins. Co.*, —— F.R.D. ——, No. 87–7050, slip. op. (E.D.Pa. Dec. 18, 1987).

2. For the purpose of this motion, one must assume the truth of the complaint's allegations, draw all reasonable inferences therefrom in plaintiff's favor and consider all possible theories for relief. *Labov v. Lalley*, 809 F.2d 220,

The policy endorsements provide that "the insured agrees to reimburse the company for any payment made by the company which it would not have been obligated to make under the terms of this policy except by reason of the obligation assumed in [certifying the policy as proof of financial responsibility under state law]." This provision appears to be intended to compensate the insurer for assuming a risk for which it did not receive a premium. *See Rural Mut. Ins. Co. v. Peterson*, 134 Wis. 2d 165, 395 N.W.2d 776 (1986). *See also* 8B Appleman, *Insurance Law & Practice* § 4945, at 97 (1981). So viewed, it would not convert the insurance contract into a guaranty.

■ Moreover, pursuant to its mandate to issue regulations for motor carriers "for the protection of persons or property of their patrons and the public," [3] the Pennsylvania Public Utility Commission requires common carriers to file a certificate of insurance, not a guaranty.[4] If, as alleged, Balboa filed such a certification, it may not be able to claim the policy is less effective than the statute requires. *Thompson v. Amalgamated Casualty Ins. Co.*, 207 F.2d 214, 219 (D.C.Cir.1953). Furthermore, it appears from the language of the policies, endorsements and certifications that an insured-insurer relationship was contemplated by the parties, not a guaranty relationship. *See Travelers Mut. Casualty Co. v. Herman*, 116 F.2d 151, 154 (8th Cir. 1940), *cert. denied*, 313 U.S. 564, 61 S.Ct. 842, 85 L.Ed. 1523 (1941) (similar statute, policy, endorsement and certification).

221 (3d Cir.1987); 5 Wright & Miller, *Federal Practice & Procedure* § 1357, at 602 (1969).

**3.** 66 Pa.C.S.A. § 512 (Purdon 1979).

**4.** 52 Pa.Code 29.104(a) provides:
[N]o certificate will issue or authorize the operations [of a common carrier engaged in intrastate commerce], except as provided in subsection (d) [which provides for self-insurance], until there has been filed with and approved by

the Commission a *certificate of insurance* with an insurer authorized to do business in this Commonwealth, to provide for the payment of a final judgment recovered against the insured for bodily injury to or the death of a person, or the loss of or damage to the property of others resulting from the operation, maintenance or use of a motor vehicle in the insured certificated service. (Emphasis added.)