Christen Michaela SHANNON, a minor, by her Guardian ad Litem, Plaintiff-Co-Appellant,

v.

James P. SHANNON and Edith Ann Shannon, Defendants-Appellants,

UNITED SERVICES AUTOMOBILE ASSOCIATION, Commercial Union Insurance Companies, Steven Schultz and Donna Schultz, Defendants-Respondents.†

Court of Appeals

*No. 87–1478. Submitted on briefs May 3, 1988.—Decided July 19, 1988.*

(Also reported in 429 N.W.2d 525.)

† Petitions to review granted.

For the plaintiff-co-appellant the cause was submitted on the briefs of *Peck & Carey,* by *Lynn Carey,* of Milwaukee.

For the defendants-appellants the cause was submitted on the briefs of *Sullivan & Associates, Ltd.,* by *Daniel C. Sullivan,* of Chicago, Illinois, and of *Minahan & Peterson, S.C.,* by *Eric J. Van Vugt,* of Milwaukee.

For the defendant-respondent United Services Automobile Association the cause was submitted on the briefs of *Peterson, Johnson & Murray,* by *Terry E. Johnson* and *Janet E. Kolar,* of Milwaukee.

For the defendants-respondents Commercial Union Insurance Companies, Steven Schultz and Donna Schultz the cause was submitted on the briefs of *Piette, Nelson, Zimmerman & Dries,* by *Ronald L.*

*Piette, Mark S. Nelson* and *Michael T. Steber,* of Milwaukee.

Before Moser, P.J., Wedemeyer and Sullivan, JJ.

SULLIVAN, J. Christen Michaela Shannon (Christen) appeals a judgment dismissing her action against Steven Schultz and Donna Schultz (Schultzes) and their insurers, United Services Automobile Association (USAA) and Commercial Union Insurance Companies (Commercial). James Shannon and Edith Shannon (Shannons) appeal the judgment dismissing their cross-complaint against the Schultzes and their insurers. Both Christen and the Shannons appeal the judgment which dismissed the Shannons' insurer, USAA, from the action.

On July 1, 1984, Christen, born May 17, 1981, was found unconscious in Lauderdale Lake near the Schultz pier. Her parents and the Schultzes are adjoining property owners fronting the lake. Each had a pier extending into it. It is unknown where Christen entered the water. That afternoon both the Schultzes and the Shannons entertained guests. When Christen went over to the Schultzes, Mrs. Shannon called her home. Mrs. Schultz responded, "[i]t's OK. She's not hurting anything. She'll be all right." Shortly thereafter Christen was found in the lake. Christen has suffered severe injuries and is permanently and extensively disabled. There was no defect on the Schultz property, nor was any dangerous activity carried on there.

The circuit court dismissed the claim against the Shannons' insurer, USAA, because Christen was subject to a policy provision excluding family members from coverage. It granted the motions of the Schultzes and their insurers for summary judgment against

Christen and the Shannons holding that the undisputed facts failed to establish any duty owed to Christen.[1]

The pertinent issues raised by the appellants are: (1) Whether the trial court erred in granting summary judgment to the Schultzes and their insurers, USAA and Commercial; (2) whether the trial court erred in holding that the issue of whether USAA had waived its family exclusion clause was a question of fact for the jury; (3) whether the trial court erred when it failed to grant Christen's partial summary judgment motion, since USAA had waived the exclusion; and (4) whether the Schultzes were immune from liability under sec. 895.52, Stats.

We reverse the grant of summary judgment to the Schultzes because material issues of fact bearing on their negligence are presented. Because USAA waived the family exclusion defense, as a matter of law, we reverse the dismissal of the claims against USAA. We also determine that sec. 895.52, Stats. does not provide immunity to the Schultzes. The disposition of these issues make it unnecessary for us to consider other issues raised by the parties.

## SUMMARY JUDGMENT DISMISSING CAUSE OF ACTION AGAINST THE SCHULTZES

We review the circuit court's grant of summary judgment by applying the standards set forth in sec. 802.08(2), Stats., in the same manner as the trial court. *Green Spring Farms v. Kersten,* 136 Wis. 2d 304, 315, 401 N.W.2d 816, 820 (1987). Under sec. 802.08(2),

---

[1]We do not agree that the facts, concerning the Schultzes' liability, are undisputed.

summary judgment shall be entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The court should not grant summary judgment "unless the moving party demonstrates a right to judgment with such clarity as to leave no room for controversy." *Waters v. United States Fidelity & Guar. Co.,* 124 Wis. 2d 275, 279, 369 N.W.2d 755, 757 (Ct. App. 1985).

Christen's amended complaint alleges that the Schultzes were negligent in failing to protect her from the dangers presented by the lake. She and her parents argue that her presence on the Schultzes' patio, Mrs. Schultz's assurance that Christen would be all right on their premises, and the Schultzes' subsequent failure to supervise Christen, taken together, raised an issue of negligence on the part of the Schultzes. Christen and her parents rely on *Antoniewicz v. Reszczynski,* 70 Wis. 2d 836, 236 N.W.2d 1 (1975), to impose liability.

█

*Antoniewicz* abolished the common law distinctions between a licensee and an invitee vis-a-vis the land occupier or landowner (hereinafter land occupier). *Id.* at 856–57, 236 N.W.2d at 11. Prior to 1975, the land occupier's duty to a person on his land depended on the status of the person—trespasser, licensee, or invitee.[2] *LePoidevin v. Wilson,* 111 Wis. 2d 116, 121,

[2]A trespasser is a person who enters the land occupier's premises without express or implied consent from the occupier, and solely for his own pleasure, advantage, or purposes. *Reddington v. Beefeaters Tables, Inc.,* 72 Wis. 2d 119, 124, 240 N.W.2d 363,

330 N.W.2d 555, 558 (1983). Toward a trespasser, the land occupier only has the duty to refrain from willful and intentional injury. *Szafranski v. Radetzky,* 31 Wis. 2d 119, 125, 141 N.W.2d 902, 905 (1966). This remains the law of Wisconsin today. *See Anderson v. Green Bay & W. R.R.,* 99 Wis. 2d 514, 518, 299 N.W.2d 615, 618 (Ct. App. 1980).

Before *Antoniewicz,* the land occupier's duty toward a licensee was the same as the duty owed to a trespasser except that the land occupier had an additional duty to exercise ordinary care to prevent traps, "a dangerous condition that is known to the landowner but concealed from the licensee," and active negligence on his property. *Antoniewicz,* 70 Wis. 2d at 842, 236 N.W.2d at 4.

Unlike the licensee, the invitee was not required to allege a trap or active negligence to impose liability against a negligent land occupier. The land occupier had a duty to exercise ordinary care under the circumstances, which included the duty to refrain from setting traps or committing active negligence.

> Landowners are under a duty to exercise reasonable care to avoid creating an unreasonable risk of harm to visitors through *active negligence.* ... [T]his duty [is owed] to all [persons] who are consensually upon their land whether they would have been classified as invitees or as licensees at common law.

366 (1976). A licensee is a person who has a privilege to enter on the land, arising from permission or consent of the occupier, but who enters for his own purpose. *Id.* Whereas, an invitee is a person who enters with consent for the purpose of conferring some benefit upon the land occupier. *Copeland v. Larson,* 46 Wis. 2d 337, 342, 174 N.W.2d 745, 748 (1970).

*Lloyd v. S. S. Kresge Co.,* 85 Wis. 2d 296, 304, 270 N.W.2d 423, 427 (Ct. App. 1978) (citations omitted) (emphasis added).

Thus, prior to *Antoniewicz,* the land occupier owed no duty of ordinary care to a licensee for defects and conditions on the premises except to prevent traps. The only duty of ordinary care was to prevent negligent activities committed on the land. However, the land occupier had a general duty to exercise ordinary care toward invitees which included preventing defects and conditions on the land, as well as preventing injuries arising from activities on the land.

In abolishing the common law distinctions between licensees and invitees, *Antoniewicz,* held that:

> The duty toward all persons who come upon property with the consent of the occupier will be that of ordinary care. By such standard of ordinary care, we mean the standard that is used in all other negligence cases in Wisconsin. ... Under that test, as we have repeatedly stated, negligence is to be determined by ascertaining whether the defendant's exercise of care foreseeably created an unreasonable risk to others.

70 Wis. 2d at 857, 236 N.W.2d at 11 (citations omitted). *Antoniewicz* involved a defect on the premises. The plaintiff, a licensee, fell on a patch of ice on the defendant's porch. Because there was no trap or active negligence, under the old law the plaintiff would not have been able to recover. The *Antoniewicz* court concluded that the common law distinctions were irrational and unwarranted. *See id.* at 854, 236 N.W.2d at 10.

The Schultzes allege, and the trial court agreed, that under *Antoniewicz,* land occupier liability was

limited to the duty to exercise ordinary care to prevent defects and conditions which were dangerous to the nontrespasser. The trial court found that the Schultzes were not liable, as a matter of law, because Christen's injuries had not been caused by a defect or a condition on the premises. The trial court's holding, in effect, made land occupiers immune from liability for all acts of negligence not resulting from conditions and defects on the premises. We disagree with the trial court's conclusion and its analysis of *Antoniewicz*.

Although *Antoniewicz* itself involved a defect on the defendants' land, a land occupier may still be held liable for negligence arising out of activities conducted on the land. *See Christians v. Homestake Enter., Ltd.,* 101 Wis. 2d 25, 35, 303 N.W.2d 608, 613 (1981) (there is a distinction between activities conducted on the land and conditions of the land). Before *Antoniewicz,* a land occupier had a duty to exercise ordinary care to refrain from active negligence against a nontrespasser on his premises. *Lloyd,* 85 Wis. 2d at 304, 270 N.W.2d at 427. *Antoniewicz* did not eliminate this duty nor did it limit the liability of landowners to defects and conditions on the premises, it merely abolished the distinctions between a licensee and an invitee. *See Waters,* 124 Wis. 2d at 281, 369 N.W.2d at 758.

In *Christians* the supreme court stated that "[d]ifferent rules have developed regarding the possessor's liability arising out of activities conducted on the land and arising out of conditions of the land (natural and artificial) ... ." 101 Wis. 2d at 35, 303 N.W.2d at 613. The duty to exercise ordinary care under the circumstances, as stated in *Antoniewicz,* includes both active and passive negligence which occurs on the

771

land. Therefore, the Schultzes were not immune from negligence committed on their premises which did not result from dangerous conditions and defects.

Although under *Antoniewicz* it is no longer necessary to specifically allege active negligence to recover, since the land occupier has a duty to exercise ordinary care for all nontrespassers on his land, the land occupier-licensee active negligence cases, pre-*Antoniewicz,* are instructive.

In land occupier-licensee cases "active negligence" was distinguished from conditions on the premises. *LePoidevin,* 111 Wis. 2d at 122, 330 N.W.2d at 558.

> The term "active negligence," then, as used in licensor-licensee cases, connotes the carrying on of some operation or activity in a negligent manner.
> . . .
> A condition of the premises whether created through an affirmative act of a defendant or through natural causes is not an activity.

*Kaslo v. Hahn,* 36 Wis. 2d 87, 92–93, 153 N.W.2d 33, 36 (1967).

In *LePoidevin,* two young men engaged in horseplay on a pier with the plaintiff, a seventeen year old girl. When one man grabbed her towel, she dove into the shallow lake and was injured. Reversing an order sustaining a demurrer to her complaint, the supreme court held that a jury could find the men negligent by their affirmative conduct under the circumstances.

We conclude that the duty to exercise ordinary care toward nontrespassers, as stated in *Antoniewicz,* is the same as the duty of care in the usual negligence

case.[3] Also, the duty is not limited to conditions and defects on the premises.

A material issue of fact was presented to the trial court—whether the Schultzes exercised ordinary care under the circumstances. Christen's mother called Christen home when she saw Christen on the Schultzes' patio near the lake. Mrs. Schultz advised Mrs. Shannon that Christen was not disturbing anyone and that she would be all right on their property. Shortly thereafter, Christen was found in the lake. A reasonable jury, properly instructed, could find that it was foreseeable that Christen would wander into the lake when the Schultzes declined to send Christen home and then subsequently failed to supervise her. Thus, the issue of fact relating to the negligence of the Schultzes made the grant of summary judgment improvident.

We also conclude that the Schultzes' argument that the lake presented an open and obvious danger, relieving them of liability, is without merit. The lake was not open and obvious as to Christen. A three-year old child cannot be "reasonably expected to discover" the dangers associated with a lake. *See* Sec. 891.44, Stats. (a child under the age of seven cannot be found guilty of negligence).

---

[3]*Christians* held that the duty owed in a land occupier liability case was different than the duty owed in the usual negligence case. 101 Wis. 2d at 34–35, 303 N.W.2d at 612–13. However, the supreme court, in *LePoidevin,* in an active negligence case, quoted *Christians* for the proposition that the land occupier duty of ordinary care is the same as in the typical negligence case. *LePoidevin,* 111 Wis. 2d at 124, 330 N.W.2d at 560. We conclude that the language in *Christians* is in conflict with *Antoniewicz* and *LePoidevin* and should not be followed.

## WAIVER

USAA issued to the Shannons a Homeowners Policy providing $300,000 public liability coverage and a Personal Umbrella Policy with a $1,000,000 limit. The policies contained an exclusion for bodily injury to an "insured."[4] As defined by the policy, Christen, a relative and resident in her parents' household, was an insured.

The Shannons argue that USAA voluntarily waived this policy defense by designating an attorney to represent both them and USAA, by failing specifically to plead the defense in their answer and by forwarding to them a nonspecific letter of reservation of rights which did not single out the family exclusion defense. Christen argues, additionally, that waiver is established by a letter of July 30, 1985, from Tom W. Lyons, a USAA litigation supervisor, to the Shannons advising them, *inter alia*, that they may retain an attorney for the uninsured exposure. This letter did not mention the family exclusion.

Christen and the Shannons argue that USAA knew or should have known the existence of the defense. We agree.

---

[4]The Shannon policy stated:

*Coverage E - Personal Liability,* does not apply to:

. . .

f. *bodily injury* to you or any *insured* within the meaning of part a. or b. of Definition 3. *"insured".*

DEFINITIONS

3. *"insured"* means you and the following residents of your household:
 a. your relatives

(emphasis in original).

■
Waiver consists of three factors: (1) a right possessed by the waiving party; (2) knowledge of the right by the waiving party; and (3) an intentional and voluntary waiver. Wis J I—Civil 3057. First, the parties concede that USAA possessed a right under the family exclusion clause. Second, USAA's knowledge of the family exclusion clause is established by the fact that it drafted the policy. *See Gay & Taylor, Inc. v. St. Paul Fire & Marine Ins. Co.,* 550 F. Supp. 710, 714 (W.D. Okla. 1981) (where insurance company had prepared policy and had possession of it, the company was charged with knowledge of what policy covered); *Attoe v. State Farm Mut. Auto. Ins. Co.,* 36 Wis. 2d 539, 546, 153 N.W.2d 575, 579 (1967). The remaining question is whether the evidence establishes a voluntary and intentional waiver.

■
Although waiver is defined as "a voluntary and intentional relinquishment of a known right," actual intent is not necessary to prove waiver. *Attoe,* 36 Wis. 2d at 545, 153 N.W.2d at 579 (1967). Waiver may be established by the conduct of the parties. *Id.* "[W]here waiver is established by the facts, the claim of absence of intent to waive does not overcome the waiver." *Id.*

It is without dispute that Christen filed her original complaint July 15, 1985, naming her parents and USAA as defendants. The complaint alleged that Christen was a minor and a resident of her parents' home. USAA designated Attorney John V. Schmid to represent both the Shannons and USAA. On July 31, 1985, Schmid filed an answer for both the Shannons and USAA which did not allege the family exclusion provision. On March 20, 1986, the court substituted Attorney Terry Johnson for Schmid to represent

USAA. Another attorney was substituted for the Shannons on April 28, 1986. USAA first made known its reliance on the policy defense March 26, 1986, when Johnson filed a motion for summary judgment.

The circuit court concluded that an issue of fact was raised by the waiver issue. The court submitted the issue to a jury which determined that USAA did not waive its family exclusion policy defense.

When material facts surrounding waiver are without dispute, an issue of law is presented. *Rural Mut. Ins. Co. v. Peterson,* 134 Wis. 2d 165, 180, 395 N.W.2d 776, 782 (1986). Because the facts concerning the waiver issue are undisputed in this case, we conclude that the circuit court erred in submitting the issue to a jury. Therefore, a question of law is presented and we will review the waiver issue *ab initio. See id.* at 170, 395 N.W.2d at 778.

USAA's conduct, in dealing with Christen's insurance claim, established that it intended to waive the family exclusion policy defense. For instance, USAA failed to specifically plead the defense in its answer. In *Attoe* the supreme court stated: "State Farm, having answered on the merits without properly pleading its defense predicated on the no-action clause of its policy, thereby waived such defense." *Attoe,* 36 Wis. 2d at 548, 153 N.W.2d at 580. The court noted that although the service of a notice of retainer and entry of appearance alone did not constitute a waiver, its subsequent conduct in defending the suit on the merits without informing the plaintiffs that it intended to rely on the no-action defense, was a waiver. *Id.* at 547–49, 153 N.W.2d at 580–81.

USAA responds that its answers to the original and amended complaints contained language sufficient to invoke this defense. The answer alleges: "[T]hat said policies were and are subject to all of the terms conditions [sic], limitations and exclusions contained therein including but not limited to a limitation for injuries... ." The answer to the amended complaint contained almost identical language.

We conclude that the general language found in USAA's answer is not sufficient to invoke the family exclusion defense under the circumstances. The family exclusion clause that was applied in this case was or should have been evident to USAA upon reading Christen's complaint. The failure to specifically plead the family exclusion clause waived the defense.

We further conclude that USAA's July 17, 1985 reservation of rights letter, which failed to rely explicitly upon the family exclusion clause, established USAA's intent to waive the defense. The purpose of the letter, *inter alia,* was to inform the insured of defenses the insurer intended to raise against the insured. The insured then may seek separate representation on such issues. USAA argues it never intended to waive the defense, and relies on the testimony of several employees that they did not consciously think about the exclusion when they considered the claim. We reject USAA's argument because, as the insurer, it was chargeable with knowledge of its family exclusion.

*Hickey v. Wisconsin Mut. Ins. Co.,* 238 Wis. 433, 300 N.W. 364 (1941), held that an insurer may reserve policy defenses and, at the same time, defend the insured in the lawsuit, so long as it notifies the insured of the defenses before it appears on the insured's behalf. *Id.* at 436, 300 N.W. at 366. In *Hickey*

the insurer investigated the claim and appeared on the insured's behalf. Thereafter, the company attempted to assert, for the first time, a policy defense based on timeliness of notice.

The court held that the insurance carrier had waived its defense since "[n]either in its letter referring to the alleged misrepresentation nor in the nonwaiver agreement did appellant *specifically refer* to the lack of notice or give any indication of its intention to raise any objection on that ground." *Id.* at 436–37, 300 N.W. at 366 (emphasis added). Thus, USAA was required to specifically state its policy defense in its reservation of rights letter. Failure to inform the insured of the defense constituted a waiver.

## IMMUNITY FROM LIABILITY

The Schultzes argue that sec. 895.52(2), Stats. immunized them from liability to Christen.[5] Section 895.52, created in sec. 5, 1983 Wis. Act 418, effective

---

[5]Section 895.52(2), Stats., states:

No Duty; Immunity From Liability. (a) Except as provided in subs. (3) to (6), no owner and no officer, employe or agent of an owner owes to any person who enters the owner's property to engage in a recreational activity:

1. A duty to keep the property safe for recreational activities.

2. A duty to inspect the property, except as provided under s. 23.115(2).

3. A duty to give warning of an unsafe condition, use or activity on the property.

(b) Except as provided in subs. (3) to (6), no owner and no officer, employe or agent of an owner is liable for any injury to, or any injury caused by, a person engaging in a recreational activity on the owner's property or for any injury resulting from an attack by a wild animal.

May 15, 1984, limited property owners' liability for persons who enter upon the owner's land for recreational activity.[6] Sec. 895.52(1)(g), Stats. defines recreational activity.[7]

Sec. 895.52, Stats. does not apply to cases of land occupier negligence when a party enters onto the land for nonrecreational purposes. The last sentence of the statement of legislative intent clearly indicates that the scope of the new act was limited to owners'

---

[6] Section 1 of the Act stated the legislative intent:

The legislature intends by this act to limit the liability of property owners toward others who use their property for recreational activities under circumstances in which the owner does not derive more than a minimal pecuniary benefit. While it is not possible to specify in a statute every activity which might constitute a recreational activity, this act provides examples of the kinds of activities that are meant to be included, and the legislature intends that, where substantially similar circumstances or activities exist, this legislation should be liberally construed in favor of property owners to protect them from liability. The act is intended to overrule any previous Wisconsin supreme court decisions interpreting section 29.68 of the statutes if the decision is more restrictive than or inconsistent with the provisions of this act.

[7] Section 895.52(1)(g) reads as follows:

"Recreational activity" means any outdoor activity undertaken for the purpose of exercise, relaxation or pleasure, including practice or instruction in any such activity. "Recreational activity" includes, but is not limited to, hunting, fishing, trapping, camping, picnicking, exploring caves, nature study, bicycling, horseback riding, birdwatching, motorcycling, operating an all-terrain vehicle, ballooning, hang gliding, hiking, tobogganing, sledding, sleigh riding, snowmobiling, skiing, skating, water sports, sight-seeing, rock-climbing, cutting or removing wood, climbing observation towers, animal training, harvesting the products of nature and any other outdoor sport, game or educational activity, but does not include any organized team sport activity sponsored by the owner of the property on which the activity takes place.

liability for recreational land use purposes. Christen was visiting the Schultzes and was not on the premises for a "recreational activity."

In summary we determine: (1) That an issue for the jury is raised whether the Schultzes were negligent in failing to take precautions for Christen's safety; (2) that USAA waived its family exclusion defense; and (3) that sec. 895.52, Stats. does not immunize the Schultzes from their negligence, if any, toward Christen. We therefore reverse the judgment and remand the case for further proceedings.

*By the Court.*—Judgment reversed and cause remanded for further proceedings.